| | |
|---|---|
| **DANIEL CARSTAIRS, on behalf of himself and all others similarly situated,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**UNIVERSITY OF ROCHESTER,** )<br>)<br>**Defendant.** ) | **United States District Court**<br>**Western District of New York** |

## COMPLAINT

Plaintiff Daniel Carstairs ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant University of Rochester ("Rochester"), and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, and says:

### I. NATURE OF THE CASE

1. Rochester is a prestigious private university in upstate New York, providing higher education in the arts, sciences, engineering, medicine, education, and business. Plaintiff is a student at Rochester's The College of Arts, Science, and Engineering, and has taken courses at its famed Eastman School of Music, which is consistently ranked among the best music conservatories in the nation.

2. On March 11, 2020, Rochester announced that it was canceling in-person classes due to the pandemic of the Coronavirus Disease 2019 ("COVID-19").

3. Plaintiff does not dispute that Rochester's decision to cease in-person instruction was warranted. Plaintiff asks merely to be refunded the money he spent for educational services that were not provided.

4.      For the Spring 2020 semester, students like Plaintiff paid Rochester over $1,720 in tuition for each "credit hour" of education.[1] By Rochester's published policy, a "credit hour" is fifteen hours of "classroom or direct faculty instruction" plus thirty additional "hours of out-of-class student work." Undergraduate students like Plaintiff pay more than $27,000 in tuition alone for a fifteen-week semester.

5.      Prior to its March 11, 2020 announcement that it would cancel two days of classes and cease in-person instruction, Rochester permitted online education for only some courses in only some schools, and typically charged far less in tuition. For example, for the Spring 2020 semester, Rochester charged students $1,720 per credit hour for undergraduate courses in arts, sciences, and engineering, but charged 71% less – $503 per credit hour – for online undergraduate humanities and science courses.

6.      For each credit hour in the Spring 2020 semester, students like Plaintiff received only seven hours – less than half – of the promised fifteen hours of "classroom or direct faculty instruction."

7.      Though Rochester could no longer provide the remaining eight hours of classroom/direct faculty instruction per credit hour, Rochester demanded that students pay the full tuition price.

8.      Students like Plaintiff also received dramatically less than the promised thirty hours of additional "out-of-class student work" per credit hour.

9.      Similarly, students like Plaintiff paid hundreds of dollars in fees for services and access to facilities and equipment over the fifteen-week semester. Though Rochester provided

---

[1]     For undergraduates, spring semester 2020 tuition is $27,520 (and $165 more for students in the Eastman School of Music). Rochester's student policies state that undergraduates are expected to carry "a normal academic load of 16 credits," or $1,720 per credit hour, on average.

these services and facility/equipment access for only seven weeks, and could not provide them for the full fifteen weeks, Rochester demanded that students pay fees for the entire fifteen-week semester.

10.     While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, Rochester has failed to apportion the burden in an equitable manner or consistent with its obligations as an educational institution.

11.     Rochester is not entitled, by either contract or equitable principles, to pass the entire cost of its COVID-19 related closure to its students and their families. Plaintiff and the putative class are entitled to a partial refund of the tuition, fees, and other related payments for in-person educational services, access to facilities, and/or related opportunities for which they paid that Rochester did not provide.

12.     Rochester's online course policy and deeply discounted online course tuition reflects the inability of online classes to replicate the full academic opportunities and experiences of in-person instruction. Remote learning options cannot replace the comprehensive educational experience promised by Rochester. Access to facilities, materials, laboratories, faculty, student collaboration, and the opportunity for on campus living, school events, dialogue, feedback and critique are essential to the in-person educational experience.

13.     For example, Plaintiff's chamber ensemble and organ classes could not be taught in an online format. For these classes, Rochester ceased providing any instruction. Beginning March 18, 2020, Rochester provided only online instruction for Plaintiff's chemistry classes, though it was similarly impossible to fulfill the courses' experiential laboratory portions.

14. Plaintiff and the putative class contracted and paid for an education, not course credits. They paid for the robust education and full experience of academic life on Rochester's campus; remote online learning cannot provide the same value as in-person education.

15. As a result, Rochester has financially damaged Plaintiff and the putative class members. Plaintiff brings this suit because Plaintiff and the class members did not receive the full value of the services for which they paid. They lost the benefit of their bargain and/or suffered out-of-pocket loss. They are entitled to recover compensatory damages, trebling where permitted, and attorneys' fees and costs.

16. Plaintiff seeks, for himself and the putative class members, a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of online classes and the amount of time in the Spring 2020 and following semesters when Rochester ceased in-person classes, campus services and access to campus facilities, continuing through to such time as Rochester reinstates in-person classes.

## II. JURISDICTION AND VENUE

17. The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than Rochester, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Rochester is headquartered in this district.

19. The Court has personal jurisdiction over Rochester because Rochester is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because Rochester conducts substantial business in this district.

### III.   PARTIES

20. Plaintiff Daniel Carstairs is a citizen and resident of the State of New York. Plaintiff has attended University of Rochester since the Fall 2018 semester. Plaintiff paid, either directly or through a third party paying on his behalf, approximately $27,520 in tuition to Rochester for the 2020 Spring semester for a double major in chemistry and music.

21. University of Rochester is a private research university comprised of seven constituent schools. Rochester had a total enrollment of over 6,649 undergraduate students and over 4,893 graduate students for the 2019-2020 academic year. As of June 2018, Rochester reportedly had an endowment of $2.47 billion.

22. Rochester was eligible to receive federal stimulus funding under the CARES Act, which provides for approximately $14 billion for colleges and universities based on enrollment numbers in order to mitigate the financial impact of the COVID-19 crisis on both institutions and students. On April 27, 2020, Rochester applied for CARES Act funding. On May 6, 2020, Rochester received $3,005,849 (50% of its total allocation). As of July 17, 2020, Rochester distributed $2,953,224.48 to 4,439 students. The bulk of the funds, $2,254,387, were distributed to students of The College of Arts, Science, and Engineering for: summer 2020 room and board based on financial need if the student was unable to return home due to COVID-19; storage and packing costs for students unable to pick up their belongings after spring break; and laptops for high-need students for a summer academic program.

## IV.    FACTUAL ALLEGATIONS

**A.    Contract Terms**

23.    Plaintiff and Class members entered into a contract with Rochester whereby, in exchange for the payment of tuition, fees and other related costs, Rochester would provide an agreed-upon number of classes through in-person instruction and access to physical resources and school facilities such as libraries, laboratories, and classrooms.

24.    For each credit hour, Rochester promised to provide the education specified in the course catalog and course syllabus through fifteen hours of "classroom or direct faculty instruction" and an additional minimum of thirty hours of out-of-class instruction work or the equivalent (such as laboratory work, internships, and studio work).[2]

25.    Online instruction was not permitted as a substitute for "direct faculty instruction" unless the online format was tested, reviewed and approved by the school, and communicated to students before they registered for classes.[3] Under Rochester's personnel policy, even to prevent contagion, telecommuting was no substitute for physical presence.[4]

---

[2]    University of Rochester Credit Hour Policy and Compliance, available at https://www.rochester.edu/provost/assets/PDFs/Credit%20Hour%20Policy.pdf.

[3]    *See, e.g.,* University of Rochester, Eastman School of Music Guidelines for Online Course Development ("To ensure that students have full information about the format of each course as they make registration decisions, departments will make decisions at least a semester in advance, and include that information as we publish the course schedule."), available at https://www.esm.rochester.edu/academic-affairs/files/Online-Course-Development-Memo-for-Faculty-1.pdf.

[4]    *Compare* University of Rochester Personnel Policy/Procedure 324 (March, 2015), available at http://web.archive.org/web/20190610183841/http://www.rochester.edu/working/hr/policies/pdfpolicies/324.pdf, *with* University of Rochester Personnel Policy/Procedure 324 (July 2020), available at https://www.rochester.edu/working/hr/policies/pdfpolicies/324.pdf.

26. Plaintiff accepted Rochester's offer.

27. Plaintiff substantially performed its contractual obligations. Rochester did not.

**B.   Closure of Campus and Suspension of In-Person Education**

28. On March 11, 2020, while students were on spring recess, Rochester announced it was canceling all in-person classes and effectively closed its campus.

29. While Rochester's decision to close campus and end in-person classes was warranted by circumstances, it effectively breached or terminated the contract Rochester had with each and every student and tuition provider, who paid for the opportunity to participate fully in the academic life on the Rochester campus.

30. Though all in-person instruction ended on March 6, 2020, some classes were taught in an online format beginning March 18, 2020. Even students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences), Rochester provided either no instruction or only remote, online instruction.

31. As a result of the closure of Rochester's campuses and facilities, Rochester has failed to deliver the educational services, facilities, access and/or opportunities for which Plaintiff and the putative class contracted and paid, either directly or through a third-party on their behalf.

32. Rochester subsequently decided that in the Fall 2020, on-campus life would be drastically reduced with the vast majority of faculty and staff continuing to work remotely into the foreseeable future.

33. Though Plaintiff and members of the Class paid Rochester tuition in exchange for a full semester of in-person education, Rochester ceased to provide the in-person education it promised, and thus has failed to uphold its side of the agreement. Nonetheless, Rochester insists

that students uphold their side of the agreement, and refuses to refund tuition and related expenses.

34.     In so doing, Rochester is attempting to replace the irreplaceable – on-campus life at an elite university – with "virtual learning" via online classes, and is attempting to pass off this substitute educational experience as the same as or just as good as full participation in the university's academic life.

35.     Plaintiff and members of the Class paid Rochester tuition in reliance on its promise of teaching a certain number of courses in an in-person course format and with in-person facility access. Plaintiff did not choose to attend and/or pay tuition for an online institution of higher learning, but instead chose to attend Rochester's institution and enroll on an in-person basis.

## C.     Inferiority of Online Educational Experience

36.     As Rochester emphasized in its 2020 Faculty Handbook, "The absence of individual faculty members from campus interferes with the educational program of students and deprives colleagues of important intellectual stimulation."[5]

37.     At least one academic study found that "[o]nline courses do less to promote academic success than do in person courses." The study found that:

      a)     Taking a course online reduced student achievement in that course by .44 points on the traditional four-point grading scale, a full one-third of a standard deviation;

      b)     Specifically, students taking the in-person course earned roughly a B- (2.8

---

[5] 2020 University of Rochester Faculty Handbook at 44, available at https://www.rochester.edu/provost/wp-content/uploads/2020/07/Faculty-Handbook_May-2020.pdf

      GPA) versus a C (2.4 GPA) for students taking an online version of the same course;

  c) Taking a course online also reduces future grades by 0.42 points for courses taken in the same subject area in the following semester; and

  d) Taking an online course reduced the probability of the student remaining enrolled in the university a year later by over ten percentage points.

Eric P. Bettinger *et al., Virtual Classrooms: How Online College Courses Affect Student Success*, AMERICAN ECONOMIC REVIEW, Vol. 107, No. 9, p. 2857.

  38. The move to online-only classes deprived students of the opportunity to benefit from a wide variety of academic and student events, on-campus entertainment, facilities, and athletic programs, which provided considerable value to Plaintiff and the Class members.

  39. The online learning options Rochester offered for the Spring 2020 and Summer 2020 semesters, though consistent with safety measures, cannot provide the academic and collegiate experience Rochester extols.

**D. Lower Tuition for Online Education**

  40. In-person education is worth more than online education.

  41. Accordingly, the tuition and fees for in-person instruction at Rochester are higher than tuition and fees for its own online classes and for other online institutions. Such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

  a) Face to face interaction with professors, mentors, and peers;

  b) Access to facilities such as libraries, laboratories, computer labs, and study rooms;

    c)      Student governance and student unions;

    d)      Extra-curricular activities, groups, intramural sports, etc.;

    e)      Student art, cultures, and other activities;

    f)      Social development and independence;

    g)      Hands on learning and experimentation; and

    h)      Networking and mentorship opportunities.

42.    The fact that Rochester students paid a higher price for an in-person education than they would have paid for an online education is illustrated by the vast price difference in Rochester's in-person, on-campus programs versus Rochester's own online learning program.

43.    For example, for the Spring 2020 semester, Rochester charged undergraduate students of The College of Arts, Science, and Engineering an average of $1,720 per credit hour. In comparison, Rochester charged only $503 per credit hour – 71% less – for online undergraduate courses in the arts and sciences.

**E.**    **Damages**

44.    Through this lawsuit, Plaintiff seeks for himself and Class members Rochester's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for the value of classes canceled, the diminished value of educational opportunities, the reduced hours of instruction, as well as for each subsequent semester and continuing until Rochester resumes in-person classes. Plaintiff seeks return of these amounts on behalf of himself and the Class as defined below.

45.    Plaintiff also seeks damages relating to Rochester's passing off an online,

"virtual" college experience as similar in kind to full immersion in the academic life of a college campus.

## V. CLASS ACTION ALLEGATIONS

46. Plaintiff seeks to represent a class defined as:

> Any person who paid or caused to be paid tuition and/or fees to attend University of Rochester when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19.

Specifically excluded from the Class are Rochester, Rochester's officers, directors, trustees and agents, the judge assigned to this action, and any member of the judge's immediate family.

47. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

48. **Numerosity.** The members of the Class are geographically dispersed and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff at this time, the true number of Class members is known by Rochester and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Rochester and third-party retailers and vendors.

49. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a) whether Rochester accepted money from Class members in exchange for

        the promise to provide services;

   b)   whether Rochester provided the services for which Class members contracted;

   c)   whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Rochester did not provide; and

   d)   whether Rochester is liable to Plaintiff and the Class for unjust enrichment.

50.   **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Rochester's wrongful conduct as set forth herein. Further, there are no defenses available to Rochester that are unique to Plaintiff.

51.   **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

52.   **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Rochester. It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory

judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

53. In the alternative, the Class may also be certified because:

a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Rochester; and/or

b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c) Rochester has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach of Contract

54. Plaintiff restates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

55. Plaintiff brings this claim individually and on behalf of the members of the Class against Rochester.

56. Through its student policies, the admission agreement, and payment of tuition and fees, Plaintiff and each member of the Class entered into a binding contract with Rochester.

57. As part of the contract, and in exchange for the aforementioned consideration, Rochester promised to provide in-person education services, including in-person instruction and access to on-campus resources, for the full duration of the Spring 2020 semester, and continuing into the 2020-2021 academic year.

58. Plaintiff and Class members fulfilled their end of the bargain when they paid monies due for tuition, fees, and related expenses.

59. Rochester has failed to provide the contracted-for services but has retained tuition monies paid by Plaintiff and the Class, and refuses to issue a corresponding tuition adjustment.

60. Plaintiff and members of the Class have suffered damage as a direct and proximate result of Rochester's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

61. As a direct and proximate result of Rochester's breach, Plaintiff and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Rochester for services that Rochester has failed to deliver.

## COUNT II
**Unjust Enrichment**

62. Plaintiff restates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

63. Plaintiff brings this claim individually and on behalf of the members of the Class against Rochester, and in the alternative to Count I.

64. Plaintiff and members of the Class conferred a benefit on Rochester in the form of

monies paid for tuition, fees, and related expenses in exchange for certain service and promises. This tuition was intended to cover in-person educational services for the academic semester.

65. Rochester voluntarily accepted and retained this benefit by accepting payment.

66. Rochester has retained this benefit even though it ceased providing the full education, experience, and services for which the tuition and fees were collected.

67. The online education services Rochester substituted for the in-person education for which Plaintiff and class members paid has a substantially lesser value, but Rochester has nonetheless retained full payment.

68. It would be unjust and inequitable for Rochester to retain benefits in excess of the services it provided, and Rochester should be required to disgorge any tuition, fees and related expenses that exceed the value of online education.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Rochester as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C. For actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

D. For prejudgment interest on all amounts awarded;

E. For an order of restitution and all other forms of equitable monetary relief;

F.  For injunctive and declaratory relief as the Court may deem proper;

G.  For an order awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit; and

H.  All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: September 10, 2020

Respectfully submitted,

DANIEL CARSTAIRS, *on behalf of himself and all others similarly situated.*

By:

*/s/ Seth J. Andrews*
Seth J. Andrews, Esq.
**Law Offices of Kenneth Hiller, PLLC**.
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
T: (716) 564-3288
F: (877) 891-1189
sandrews@kennethhiller.com

Yvette Golan*
**THE GOLAN FIRM**
2000 M Street, NW, Suite #750-A
Washington, D.C. 20036
T: (866) 298-4150
F: (928) 441-8250
ygolan@tgfirm.com

*\*Pro hac vice* forthcoming

James A. Francis*
John Soumilas*
David A. Searles*

Edward H. Skipton*
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com
eskipton@consumerlawfirm.com

**Pro hac vice* forthcoming

*Attorneys for Plaintiff*