UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL CARSTAIRS, on behalf of himself
and all others similarly situated,

Plaintiff,

- vs -

UNIVERSITY OF ROCHESTER,

Defendant.

Civil Action No.:
20-cv-06690-CJS

**DEFENDANT UNIVERSITY OF ROCHESTER'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
UNDER FED. R. CIV. P. 12(b)(6)**

**NIXON PEABODY LLP**

Richard A. McGuirk
W. Daniel Deane *(Notice of Appearance to be filed)*
Kacey Houston Walker *(Notice of Appearance to be filed)*
Steven M. Richard *(Pro Hac Vice to be filed)*

1300 Clinton Square
Rochester, New York 14604
Tel.: (585) 263-1644
*Attorneys for Defendant University of Rochester*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .................................................................................................................... 2

I.     PLAINTIFF'S ALLEGATIONS ................................................................................ 2

       A.    Spring 2020 Semester. ............................................................................... 2
       B.    Semesters After Spring 2020. .................................................................... 3

II.    THE UNIVERSITY'S POLICIES AND "REPRESENTATIONS" ................................. 4

       A.    The Credit-Hour Policy.............................................................................. 4
       B.    The Course Catalog.................................................................................... 6
       C.    Rochester's Website................................................................................... 6

III.   THE UNIVERSITY'S SPRING 2020 TRANSITION TO ONLINE LEARNING
       IN RESPONSE TO THE CORONAVIRUS PANDEMIC .............................................. 6

IV.   THE UNIVERSITY'S STATEMENTS REGARDING THE FALL 2020
       SEMESTER ............................................................................................................. 7

       A.    Provost Clark's Message Regarding the Fall 2020 Semester. .................. 7
       B.    Fall 2020 Classroom Assignments and Course Schedule........................ 9

ARGUMENT ....................................................................................................................... 10

I.     PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT
       FOR SPRING SEMESTER 2020 ........................................................................... 10

       A.    The Amended Complaint Fails to Plead an Implied Contract Promising In-
            Person Education Regardless of Circumstances. ................................... 10

            1.    New York law requires that Plaintiff identify "specific promises"
                that establish the terms of the contract he alleges.................................. 10
            2.    The Amended Complaint does not identify a specific promise of
                in-person instruction. ............................................................................ 12
            3.    Plaintiff cannot identify any specific promise to provide on-
                campus resources or facilities. ............................................................... 16

       B.    The Amended Complaint Does Not Plausibly Allege an Actionable
            Breach of Plaintiff's Spring 2020 Contract with Rochester. ................. 16

II.    PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT FOR
       THE SPRING 2020 SEMESTER .......................................................................... 19

III.   PLAINTIFF'S REQUEST FOR RELIEF FOR SEMESTERS FOLLOWING THE
       SPRING OF 2020 SHOULD BE DISMISSED.......................................................... 20

       A.    A Separate Implied Contract Governs Plaintiff's Claims Each Semester. ........... 20
       B.    Rochester Did Not Promise a Full Semester of In-Person Education for
            Fall 2020, Nor to Access to Facilities for the Fall 2020 Semester. ....................... 21

i

C.      The Amended Complaint Does Not Allege That Rochester Breached Any
        Specific Agreement with Plaintiff to Provide In-Person Instruction for the
        Fall 2020 Semester.................................................................................................. 23

D.      The Amended Complaint Does Not Plausibly Allege an Actionable
        Breach of Plaintiff's Fall 2020 Contract with Rochester..................................... 23

E.      The Amended Complaint Likewise Fails to Plead a Cognizable Unjust-
        Enrichment Claim for the Fall 2020 Semester...................................................... 24

F.      Plaintiff's Claims Regarding All Other Semesters Following Spring 2020
        Must Be Dismissed. .............................................................................................. 24

CONCLUSION.................................................................................................................... 25

4850-9870-7162

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aase v. State, S. Dakota Bd. of Regents*,
    400 N.W.2d 269 (S.D. 1987) ...........................................................................................21

*Abbariao v. Hamline Univ. Sch. of Law*,
    258 N.W.2d 108 (Minn. 1977).........................................................................................21

*Bailey v. New York Law Sch.*,
    No. 16 CIV. 4283 (ER), 2017 WL 835190 (S.D.N.Y. Mar. 1, 2017).........................11, 14

*Baldridge v. State*,
    293 A.D.2d 941 (3d Dep't 2002) ...........................................................................11, 13, 15

*Bergeron v. Rochester Institute of Technology*,
    6:20-cv-06283-CJS, 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020) ....................... *passim*

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005).................................................................................................5

*Cheves v. Trustees of Columbia Univ.*,
    89 A.D.3d 463 (1st Dep't 2011) .................................................................................16, 22

*Chira v. Columbia Univ. in N.Y. City*,
    289 F. Supp. 2d 477 (S.D.N.Y. 2003)...............................................................................11

*Clark v. Daby*,
    751 N.Y.S.2d 622 (3d Dep't 2002).....................................................................................19

*Clarke v. Trustees of Columbia Univ. of City of N.Y.*,
    No. 95 CIV. 10627 (PKL), 1996 WL 609271 (S.D.N.Y. Oct. 23, 1996) ...........................17

*Doe v. Emory Univ.*,
    1:20-cv-02002-TWT (N.D. Ga. Jan. 22, 2021)..................................................................23

*Gally v. Columbia Univ.*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998)..................................................................................10

*Gertler v. Goodgold*,
    107 A.D.2d 481 (1st Dep't 1985) ................................................................................11, 17

*Gociman v. Loyola Univ. of Chicago*,
    No. 20 C 3116, 2021 WL 243573 (N.D. Ill. Jan. 25, 2021) ..............................................22

*Hassan v. Fordham Univ.*,
   No. 20-CV-3265 (KMW), 2021 WL 293255 (S.D.N.Y. Jan. 28, 2021) .................. *passim*

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)............................................................................................19

*Keefe v. New York Law Sch.*,
   71 A.D.3d 569 (1st Dep't 2010) ...............................................................................15, 16

*Lindner v. Occidental Coll.*,
   No. CV 20-8481-JFW(RAOX), 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) .........14, 22

*Maas v. Cornell Univ.*,
   94 N.Y.2d 87 (1999) ..................................................................................................10, 11

*Olsson v. Bd. of Higher Educ.*,
   49 N.Y.2d 408 (N.Y. 1980) ...........................................................................................17

*Paynter v. N.Y. Univ.*,
   319 N.Y.S.2d 893 (N.Y. App. Term 1971)...........................................................11, 18, 24

*Pearson v. Walden Univ.*,
   144 F. Supp. 3d 503 (S.D.N.Y. 2015)............................................................................15

*Rolph v. Hobart & William Smith Colls.*,
   271 F. Supp. 3d 386 (W.D.N.Y. 2017)...........................................................................11

*Routh v. Univ. of Rochester*,
   981 F. Supp. 2d 184 (W.D.N.Y. 2013) ......................................................................5, 12

*Sauer v. Xerox Corp.*,
   95 F. Supp. 2d 125 (W.D.N.Y. 2000) ...........................................................................10

*Silverman v. New York Univ. School of Law*,
   193 A.D.2d 411 (1st Dep't 1993) ..................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)........................................................................................................2

*Tiu-Malabanan v. Univ. of Rochester*,
   No. 07-CV-6499-CJS, 2008 WL 788637 (W.D.N.Y. Mar. 21, 2008)..............................17

*Univ. of Miss. Med. Ctr. v. Hughes*,
   765 So. 2d 528 (Miss. 2000)..........................................................................................21

iv

## PRELIMINARY STATEMENT

Since the outset of the COVID-19 pandemic, Defendant University of Rochester ("Rochester or the "University") has continually fulfilled its educational mission and responsibilities through essential action to protect the health and safety of its community (students, faculty, and staff) in the face of unprecedented and evolving challenges. At all times, the University acted with transparency, communicating to its community as changes became necessary. As Plaintiff Daniel Carstairs ("Plaintiff") concedes, the University's decision to pivot to remote instruction was warranted under exigent circumstances. Considered in this context, Plaintiff's breach-of-contract and unjust-enrichment claims relating to the Spring 2020 semester cannot survive. Because Plaintiff points to no specific promise of an entirely in-person education regardless of the circumstances, he fails to allege a valid implied contract. Moreover, Plaintiff's concession that Rochester's transition to remote instruction was justified demonstrates that Rochester did not act arbitrarily or in bad faith, and thus did not breach any implied educational contract that might exist. That fact is also fatal to Plaintiff's unjust-enrichment claim, which requires a showing of some form of tortious conduct to justify an equitable remedy.

Plaintiff's claims regarding the separate implied contract for the Fall 2020 semester of the current 2020/2021 academic year (and later semesters) are even more implausible. Having specifically notified its community that the Fall 2020 semester "is going to be unlike anything we've experienced before" and reciting a litany of changes to the method of instruction, including repeated statements that a substantial part of the University's classes would be online, Plaintiff's claim that Rochester promised him a full semester of in-person education is utterly implausible. Rochester's cautionary statements, contained in the very document upon which Plaintiff relies, eviscerate his implied contract claim. Given Rochester's transparency with its community, Plaintiff is unable to allege any facts suggesting bad faith, much less that the

1

University acted tortiously.  Accordingly, New York law obliges the Court, at a minimum, to dismiss Plaintiff's breach-of-contract and unjust-enrichment claims relating to all semesters following Spring 2020.

## BACKGROUND[1]

### I.    PLAINTIFF'S ALLEGATIONS

#### A.  Spring 2020 Semester.

Plaintiff claims that he and the other putative class members "entered into a binding contract with Rochester" through the University's "student policies, the admission agreement, course catalog, representations, and payment of tuition and fees."  Am. Compl. ¶ 66.  Plaintiff fails to identify any specific commitment by the University to provide him with an exclusively in-person education for the Spring 2020 semester.  Yet, he asserts that the University promised continuous in-person instruction and access to facilities by virtue of a handful of cherry-picked references to physical classrooms, "campus life," and "direct faculty instruction."  Am. Compl. ¶¶ 24-28.  While he "does not dispute that Rochester's decision to cease in-person instruction was warranted" as a result of the coronavirus pandemic (*id.* ¶ 3), and acknowledges that "[t]he online learning options Rochester offered for the Spring 2020" semester were "consistent with safety measures" (*id.* ¶ 49), Plaintiff claims that the University breached its purported promise to provide in-person education services by transitioning to online learning to curb the spread of COVID-19.  *See, e.g.*, *id.* ¶ 33.

Plaintiff asserts that he and a putative class of persons who paid tuition and fees to

---

[1] The background has been drawn from Plaintiff's Amended Complaint ("Am. Compl."), as well as "documents incorporated into the complaint by reference and matters of which the court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 327 (2007).

2

Rochester "when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19" (*id.* ¶ 56) should collect subjectively calculated damages in the form of "disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for the value of classes canceled, the diminished value of educational opportunities, the reduced hours of instruction, as well as for each subsequent semester and continuing until Rochester resumes in-person classes." *Id.* ¶ 54. He speculates that the alleged "diminished value" of his education in the last portion of the Spring 2020 semester is demonstrated by what he summarily contends is the "[i]nferiority of [o]nline [e]ducational [e]xperience" generally. Am. Compl. at 12.

Plaintiff offers just one factual allegation about the purported value of Rochester's online offerings: that the lower value of those courses is demonstrated by what he alleges is the "vast price difference in Rochester's in-person, on-campus programs versus [its] own online learning program." Am. Compl. ¶ 52. But Plaintiff does not identify the "program" he references nor the source of the price figures he alleges. *See id.* ¶ 53. In fact, the University does *not* charge less for online courses than for in-person courses.[2]

### B. Semesters After Spring 2020.

In addition to breach-of-contract and unjust-enrichment claims relating to Rochester's justified, emergency transition to online learning in the Spring 2020 semester, Plaintiff asserts

---

[2] Although no such cost differential exists for Rochester credit-bearing offerings, the Eastman Community Music School—which does not provide University credit—lists an online course for *high-school students* at a discounted fee of $503, the exact amount that Plaintiff claims. *See* https://www.esm.rochester.edu/community/ap-music-theory/ (last visited Jan. 27, 2021). Plaintiff repeats this misleading allegation even after Rochester identified its inaccuracy in the motion to dismiss Plaintiff's original Complaint. *See* Doc. 10-5 at 15.

the same claims for the "following semesters," continuing until "such time as Rochester reinstates in-person classes" (Am. Compl. ¶ 16), including for the "2020-2021 academic year." *Id*. ¶ 67.  Plaintiff alleges that Rochester has breached its contract with students during these subsequent academic terms by failing to provide "a full semester of in-person education."[3]  *Id.* ¶ 43.  On behalf of himself, and a putative class of persons who paid tuition and fees to Rochester, Plaintiff duplicates the theories outlined above "for each subsequent semester [following Spring 2020] and continuing until Rochester resumes in-person classes."  *Id.* ¶ 54.

## II.    THE UNIVERSITY'S POLICIES AND "REPRESENTATIONS"

Plaintiff claims that the terms of his implied contract with the University are supplied by the University's "student policies, the admission agreement, course catalog, representations, and payment of tuition and fees."[4]  Am. Compl. ¶ 66.  Although Plaintiff alludes to "countless representations" (*id.* ¶ 27), the Amended Complaint identifies only a few of them:

### A.  The Credit-Hour Policy.[5]

The University's Credit-Hour Policy provides that "Rochester's credit-hour calculations for degree and certificate programs follow NYSED guidelines, which are based on the U.S.

---

[3] The Amended Complaint does not allege that Plaintiff (or anyone acting on his behalf) paid tuition and fees for the 2020/2021 academic year.

[4] In his vague reference to promises concerning "payment of tuition and fees" (*id.*), Plaintiff is clearly referencing the Rochester contract that covers such payments: the University's Financial Responsibility Agreement (which was attached to Provost Clark's declaration in support of Rochester's motion to dismiss Plaintiff's original complaint).  However, in *Bergeron v. Rochester Institute of Technology*, 6:20-cv-06283-CJS, 2020 WL 7486682, at *6 (W.D.N.Y. Dec. 18, 2020), this Court indicated that, since the plaintiffs had not mentioned RIT's financial responsibility agreement in their complaint, the Court could not consider it on motion to dismiss.  Thus, Plaintiff's continued (and obviously intentional) avoidance of even mentioning the Financial Responsibility Agreement that governs his payment obligations—which clearly forms a core part of the contract between the parties, and which undercuts his claims—is a transparent dodge to avoid the Court's scrutiny of that controlling contract document at the pleading stage.

[5] On a motion to dismiss, the Court may consider documents that are incorporated by reference in or "integral to the complaint."  *Bergeron*, 2020 WL 7486682, at *6.  The Credit-Hour Policy should be considered "since the pleading repeatedly refers to the document and

Department of Education's definition of *credit hour*."  Clark Decl. Ex. A at 1.  The Credit-Hour Policy recites NYSED's definition of "semester hour," which "requires at least 15 hours (of 50 minutes each) of instruction and at least 30 hours of supplementary assignments," as well as the U.S. Department of Education's definition of "credit hour" on which it is based.  *Id.*  The Credit-Hour Policy also codifies the University's policies with respect to "Online Teaching and Learning Credit Hours" (*id.* at 2).

Contrary to Plaintiff's core assertion, the Credit-Hour Policy states that each of the University's online course offerings is "equivalent to its face-to-face counterpart" and meets the applicable state and federal credit-hour standards by providing "the same minimum level of instructional time and supplemental assignments (as face-to-face courses) as required by [NYSED] for each credit."  *Id.* at 2.  In addition to recognizing the validity of online delivery as an appropriate mode for classes at the University, the Credit-Hour Policy states:

> These policies allow for "equivalent" academic activities to replace faculty-led instructional time. An equivalent academic activity can include formally defined activities such as recitations, studios and laboratory sessions; however, it may also include additional independent academic work completed outside of class in less structured settings. In this case, the faculty-led instructional time, equivalent instructional time and supplementary work must equal the hours per week associated with the course credit hours.

*Id.* at 2-3.

---

quotes it, in connection with [the plaintiff's] claim that the University violated its terms."  *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 191 (W.D.N.Y. 2013) (Siragusa, J.).  Because the Amended Complaint cites to what appears to be an undated, incomplete version of the Policy (*see* Am. Compl., ¶ 25 n.3), the Court should consider the version of the Credit-Hour Policy operative in the Spring of 2020 and made available to Rochester students at that time.  *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).  A copy of the Credit-Hour Policy is attached to the Declaration of Robert L. Clark, Ph.D. ("Clark Decl.") sworn to February 4, 2021, as Exhibit A.

### B. The Course Catalog.

Plaintiff alleges (without support) that "Rochester promised to provide the education specified in the course catalog and course syllabus, including the time and physical location of the in-person instruction." Am. Compl. ¶ 24. The Amended Complaint does not plead the contents of any course syllabi, but it offers an "example" of a listing for a Spring 2020 course that provides a building and room number—"LCHAS 104"—signifying, Plaintiff claims, the "physical location of the in-person instruction." *Id.*

### C. Rochester's Website.

Plaintiff alleges that "countless representations about every aspect of a prospective student's life on campus that Rochester uses to attract potential students" constitute "[p]art of the agreement between Plaintiff and Rochester." *See* Am. Compl. ¶ 27. Plaintiff contends that "[t]hese representations relate . . . to the on-campus, in-person academic program students contract with Rochester to provide," but none of the cited website content refers directly or indirectly to any "in-person academic program." *Id.* ¶ 28. Instead, the Amended Complaint merely quotes general aspirational statements describing Rochester as "an inspiring place to grow and learn," and "connected to a city where creativity and ingenuity thrive." *Id.* ¶ 29.

### III. THE UNIVERSITY'S SPRING 2020 TRANSITION TO ONLINE LEARNING IN RESPONSE TO THE CORONAVIRUS PANDEMIC

On March 7, 2020, New York declared a "disaster emergency" in the State in response to the public-health threat posed by COVID-19. Accordingly, the University implemented new guidance to limit the impact of COVID-19 on the Rochester community. *See* Am. Compl. ¶ 32. The University announced that in-person instruction for its undergraduate and graduate students would cease and instruction would take place online until the end of the semester. *See id.* ¶¶ 2, 5. Following that announcement, Plaintiff alleges, "some classes were taught in an online format

6

beginning March 18, 2020" (*id.* ¶ 34), and for the balance of the Spring and the Summer

semesters, Rochester offered "online learning options" that Plaintiff concedes were "consistent

with safety measures" necessitated by COVID-19.  *Id.* ¶ 49.

## IV.     THE UNIVERSITY'S STATEMENTS REGARDING THE FALL 2020 SEMESTER

Plaintiff's characterizations of Rochester's "representations" to students concerning the

Fall 2020 semester of the current 2020/2021 academic year are contradicted by the plain

language of the statements themselves:

### A.  Provost Clark's Message Regarding the Fall 2020 Semester.

Plaintiff claims that a message to the Rochester community from Provost Robert L. Clark

on June 19, 2020 ("Provost Clark's Message"[6]), "announced that all schools (except the School

of Education) would resume classes in-person for the Fall 2020 semester."  Am. Compl. ¶ 36.

Although Provost Clark expressed "optimis[m]" that Rochester could "embark on [its] restart

and recovery phase" and provide *some* in-person educational services for the Fall 2020 semester,

he forecasted something far different from a full return to in-person instruction—the antithesis of

what Plaintiff alleges.  Clark Decl. Ex. B at 1.

In fact, Provost Clark's Message specifically announced the University would "offer *a*

*mix of* online and in-person instruction to [its] students."  *Id.* at 4 (emphasis added).  And Provost

Clark's Message makes clear that online learning, social distancing, and flexibility to adapt to

changing conditions would be hallmarks of the Fall 2020 semester:  "Like so many aspects of

our lives today, the fall semester is going to be unlike anything we've experienced before" (*id.* at

1); "We're not going to be able to give 'welcome back' hugs or 'great to see you again'

handshakes.  We're not going to be able to gather in large numbers in all our favorite spaces.  In

---

[6] A copy of the text of Provost Clark's Message is attached to the Clark Decl. as Exhibit B.

everything we do, we're all going to have to be mindful of our distance" (*id.*); "Rochester is going to do what it needs to do to help mitigate further—and unnecessary—spread of COVID-19" (*id.* at 1-2); "We are awaiting final guidelines from the Office of the Governor of New York State, which we expect any day, and will share our comprehensive plan with you as soon as it is available" (*id.* at 2); Rochester's comprehensive plan would include "the communications plan we will follow to keep our community apprised of any new developments" (*id.*); "[L]ectures in courses with large enrollments will generally be delivered remotely" for the Fall 2020 semester, supported by upgraded classrooms with "streaming and online capabilities, which will significantly increase the quality of online education in a multimodal environment" (*id.* at 4-5).

Consistent with these repeated cautionary statements, Provost Clark described the various academic units' plans for providing educational services for the Fall 2020 semester, making clear that *none of them* would offer "a full semester of in-person education" (Am. Compl. ¶ 43):

- At the College of Arts, Sciences & Engineering ("AS&E") and the Eastman School of Music ("ESM"), Provost Clark's Message explained that no in-person instruction would be offered after Thanksgiving break, after which "all remaining instruction will move online, and undergraduate students will not return to campus."

- The Eastman Institute for Oral Health announced that "all instruction will be online for the fall semester."

- The School of Nursing planned to "continue offering didactic instruction online for all programs in the fall 2020 semester."

- At Rochester's School of Medicine and Dentistry MD Program, "[l]arge group and lecture instruction will be conducted remotely," and "[s]tudent support services will be provided virtually." Similarly, doctoral, masters, and certificate programs offered by the School of Medicine and Dentistry would also conduct large group lecture instruction remotely.

- At Simon Business School, undergraduate business classes would adhere to the AS&E schedule and format (with no in-person instruction after Thanksgiving break), and graduate courses would "be taught using both in-person instruction, to the extent that circumstances permit, and a mix of synchronous and asynchronous

8

content," though the details and "exact protocols" were expected to differ by program.

- Finally, the Warner School of Education had "decided to move all instruction online for the fall term."

Clark Dec. Ex. B at 3-4.

Against the backdrop of a continuing pandemic and pervasive social-distancing constraints, Provost Clark's Message left no doubt that the experience that the University offered for the Fall 2020 semester was "not going to be the Rochester any of us are used to." *Id.* at 1.

### B. Fall 2020 Classroom Assignments and Course Schedule.

Plaintiff also points to a document titled "Fall 2020 Classroom Assignments" (a copy of which is attached to the Clark Declaration as Exhibit C) as evidence that—notwithstanding Provost Clark's Message—Rochester "[l]ater" announced "less than three weeks before Fall 2020 classes were to begin . . . that some courses would be held online." Am. Compl. ¶ 37. But the Fall 2020 Classroom Assignments document, which set forth AS&E course information that was "current as of 08/04/2020," did no such thing. Clark Decl. Ex. C at 1. Actually, it reinforced Provost Clark's earlier announcement that Rochester would offer significant components of its Fall 2020 offerings online, as it contained no fewer than 1,036 references to "online" coursework. *See generally id.* It expressly noted that some categories of courses—such as all applied lessons at ESM and the majority of School of Medicine and Dentistry courses for undergraduates—would be held online. *Id.* at 1. And even those courses listed as "in person" were not "promised to be in-person," as Plaintiff alleges. Am. Compl. ¶ 39. The Fall 2020 Classroom Assignments specifically stated that "[s]ections coded as 'in person,'" such as the one Plaintiff references (*see id.* n.11), "can be assumed to have an online equivalent." Clark Decl. Ex. C at 1.

9

# ARGUMENT

## I.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT FOR SPRING SEMESTER 2020

Regarding the Spring 2020 semester, when the University pivoted to online education in March 2020 at the outset of a worsening pandemic, Plaintiff's claim for breach of contract fails to plausibly plead any specific, unconditional, enforceable promise by Rochester to provide in-person instruction or access to on-campus resources or facilities to support an implied contract. Moreover, Plaintiff's breach-of-contract claim fails because the Amended Complaint does not plausibly plead that the University breached any promise by acting arbitrarily or in bad faith in transitioning to online learning.

### A.   The Amended Complaint Fails to Plead an Implied Contract Promising In-Person Education Regardless of Circumstances.

#### 1.    New York law requires that Plaintiff identify "specific promises" that establish the terms of the contract he alleges.

Plaintiff must plead sufficient factual matter to satisfy both well-established contract principles and New York law specific to implied educational contracts between a student and his university.  "The elements of a breach of contract claim under New York law are: (1) the existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party; and (4) damages attributable to the breach."  *Sauer v. Xerox Corp.*, 95 F. Supp. 2d 125, 128 (W.D.N.Y. 2000), *aff'd*, 5 F. App'x 52 (2d Cir. 2001).  A contract cannot be implied unless the court "may justifiably infer that the promise would have been explicitly made, had attention been drawn to it."  *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94 (1999).

The application of these contract principles to the student-university relationship "does not provide judicial recourse for every disgruntled student."  *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998); *see Routh*, 981 F. Supp. 2d at 191.  The implied contract

10

between a student and his university provides that, "if the student complies with the terms prescribed by the university, he will obtain the degree he seeks." *Baldridge v. State*, 293 A.D.2d 941, 942 (3d Dep't 2002) (internal quotation marks and citations omitted). Beyond that, "only *specific* promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." *Bailey v. New York Law Sch.*, No. 16 CIV. 4283 (ER), 2017 WL 835190, at *9 (S.D.N.Y. Mar. 1, 2017) (quoting *Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010)) (emphasis added). "'General policy statements' . . . will not suffice." *Bergeron*, 2020 WL 7486682, at *5 (citation omitted). Thus, "a cause of action for breach of contract . . . requires a contract which provides for 'certain specified services.'" *Baldridge*, 293 A.D. 2d at 943.

Moreover, an implied contract "is to be raised only to enforce a manifest equity, or to reach a result which the unequivocal acts of the parties indicate they intended to effect." *Gertler v. Goodgold*, 107 A.D.2d 481, 485 (1st Dep't) (internal quotation marks and citation omitted), *aff'd*, 66 N.Y.2d 946 (1985). Without unequivocal evidence of a contractual commitment, the university cannot be presumed to have "relinquished its authority to make its own academic judgments and to administer and allocate its resources" in its discretion. *Id.*; *see also Chira v. Columbia Univ. in N.Y. City*, 289 F. Supp. 2d 477, 485–86 (S.D.N.Y. 2003); *Paynter v. N.Y. Univ.*, 319 N.Y.S.2d 893 (N.Y. App. Term 1971).

Applying these controlling principles of deference to academic judgments and the "restricted role" that New York courts must maintain "in dealing with and reviewing controversies involving colleges and universities," *Maas*, 94 N.Y.2d 87, courts dismiss claims for breach of contract where plaintiffs fail to identify a clear, specifically promised, contractual right that the school allegedly breached. *See, e.g.*, *Bailey*, 2017 WL 835190, at *9; *Rolph v. Hobart &*

*William Smith Colls.*, 271 F. Supp. 3d 386, 407 (W.D.N.Y. 2017); *Routh*, 981 F. Supp. 2d at 208.

> **2.    The Amended Complaint does not identify a specific promise of in-person instruction.**

Plaintiff's Amended Complaint lacks any allegation of a specific promise by the University to provide Plaintiff with a fully in-person educational experience for the Spring 2020 semester regardless of circumstances, particularly during a pandemic.

> **a.    *Contrary to Plaintiff's allegations, the Credit-Hour Policy specifically provides for online instruction.***

The University's Credit-Hour Policy flatly contradicts Plaintiff's claim that the University promised to provide exclusively in-person instruction. The Amended Complaint alleges that, pursuant to the Credit-Hour Policy, "a 'credit hour' is fifteen hours of 'classroom *or* direct faculty instruction' plus thirty additional 'hours of out-of-class student work.'" Am. Compl. ¶ 4 (emphasis added). The Amended Complaint further alleges that "[o]nline instruction was not permitted *as a substitute for* 'direct faculty instruction'" except under certain conditions (*id.* at ¶ 26 (emphasis added)), and that Rochester could not "provide the remaining eight hours of classroom/direct faculty instruction per credit hour" when it transitioned to online learning upon the onset of the pandemic (*id.* at ¶ 7), implying that "direct faculty instruction" requires in-person interaction. These allegations, including the assumption that "direct faculty instruction" must be accomplished in-person, are refuted by the terms of the Credit-Hour Policy, which expressly provides that each online course at the University shall be "equivalent to its face-to-face counterpart, which includes offering the same minimum level of instructional time and supplemental assignments as required by [NYSED]." Clark Decl. Ex. A at 2. In fact, the Credit-Hour Policy goes even further, explaining that "online course instructional time may take different forms, including but not limited to, a combination of online synchronous class sessions, recorded lectures and narrated PowerPoint presentations, instructor-facilitated asynchronous

12

discussion boards, instructor-facilitated asynchronous audio/video interaction, instructor-facilitated long-term projects, and one-on-one video communications with the instructors." *Id.*

Far from "promis[ing] to provide in-person education services, including in-person instruction" (Am. Compl. ¶ 67), the Credit-Hour Policy explicitly states that the University may provide faculty-led instruction through a variety of modes of online instruction. *See Silverman v. New York Univ. School of Law*, 193 A.D.2d 411, 411 (1st Dep't 1993) (dismissing contract claim where the "allegations that defendants violated certain provisions of the Student Handbook are flatly contradicted by the Handbook itself").

**b.**  ***The course schedule contains no specific promise of in-person instruction.***

Plaintiff claims that "Rochester promised to provide the education specified in the course catalog and course syllabus, including the time and physical location of the in-person instruction" (Am. Compl. ¶ 24), but he does not identify any language suggesting that the University expressed an intent to be bound by the contents of each course listing, such that the information they contain constitutes an unalterable contractual obligation. The expected physical location of a course does not constitute a "specific promise" of a particular mode of instruction, any more than it promises that the course would never meet in-person in an alternate classroom, nor virtually through online instruction.[7] Such informational statements do not obligate the University to provide "certain specified services" (*Baldridge*, 293 A.D. 2d at 943) or represent firm contractual commitments. *See Hassan v. Fordham Univ.*, No. 20-CV-3265 (KMW), 2021 WL 293255, at \*6 (S.D.N.Y. Jan. 28, 2021) (course catalog identifying courses as online or in-

---

[7] Rochester's Fall 2020 Classroom Assignments demonstrates the distinction between mode of instruction and physical location, as it indicates that many courses with assigned physical classrooms were expected to be taught online that semester. *See* Clark Decl. Ex. C at 2 (and generally).

13

person did not constitute a promise to provide in-person instruction where there were no express statements promising that these aspects of the course were not subject to change).

### c. *The general statements about campus life on Rochester's website do not constitute contractual promises.*

Plaintiff's claim that every one of the "countless representations about every aspect of a prospective student's life on campus that Rochester uses to attract potential students" constitutes "[p]art of the agreement between Plaintiff and Rochester" (Am. Compl. ¶ 27) is contrary to New York law, which limits the terms of the implied contract to "specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school." *Bailey*, 2017 WL 835190, at *9. The "representations" concerning "Campus Life at Rochester" that Plaintiff cherry-picks from Rochester's website do not constitute "specific promises" of in-person instruction that rise to the level of contractual obligations. *See Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOX), 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020) (webpage describing college's location and its influence on the curriculum did not promise in-person instruction). Rochester's observation that it has offered "900+ concerts" or that it competes in a certain athletic league under non-pandemic circumstances (*see* Am. Compl. ¶¶ 27-28) does not translate to a binding promise to provide an entirely-in-person education under all circumstances.[8] Indeed (and in contrast to *Bergeron*), the in-person activities that Plaintiff

---

[8] Plaintiff does not allege that he ever viewed or was even aware of the contents of the "Campus Life at Rochester" webpage that he cites (*see id.* n.6) before or during the Spring 2020 semester, or that the contents of that website as of January 2021 are consistent with its contents at any time period relevant to this action. Notably, as of January 2021, that webpage includes information on "Safety guidelines for the University community" immediately below the content captured by the screenshot below paragraph 27 of his Amended Complaint. *See* http://www.rochester.edu/campus-life/ (last visited Jan. 28, 2021). That section includes "COVID-19 updates and announcements," "Information for students and families," "Health and safety guidelines," and answers to frequently asked questions, all of which link to information that details ongoing operational constraints resulting from the coronavirus pandemic.

14

describes and the online instruction that Rochester offers in ordinary times are not mutually exclusive.[9]  Mere references to campus life at Rochester do not equate to a "specific promise" to provide "certain specified services" in person.  *Baldridge*, 293 A.D.2d at 943.

### d.  *The ESM Faculty Memo and University Personnel Policy do not form the basis of an implied contract.*

Plaintiff also claims that certain Rochester employment documents—specifically, a January 2017 memorandum addressed to ESM faculty titled "Guidelines for online course development" (the "ESM Faculty Memo") (*see* Am. Compl. ¶ 26 n.4) and the University's Personnel Policy (*see id.* n.5)—precluded Rochester from offering online instruction "as a substitute for 'direct faculty instruction,'" despite the Credit-Hour Policy's authorization of online learning.  The ESM Faculty Memo and the University's Personnel Policy do not supply any enforceable terms of Plaintiff's educational contract with the University because they are not "material to the student's relationship with the school."  *Keefe*, 71 A.D.3d at 570.  To the contrary, both documents were directed to University employees only, not to students.  Not surprisingly, Plaintiff does not allege that he ever read or became aware of the terms of these documents, nor that he ever relied in any manner upon either of them.  *See Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 511 (S.D.N.Y. 2015).  Simply put, these employment documents do not supply the terms of the educational contract between Rochester and its students.

---

[9] The plaintiffs in *Bergeron* alleged that the defendant offered "both in-person, hands-on programs, and fully online distance learning programs, which it markets and prices *as separate and distinct products*," and students enrolled in the separate "online degree program are not allowed to enroll in on-campus classes."  *Bergeron*, 2020 WL 7486682, at *1 (emphasis added); *see Hassan*, 2021 WL 293255, at *6 (distinguishing *Bergeron* on the ground that it concerned "two different programs . . . that were mutually exclusive").  In contrast to *Bergeron*, Plaintiff here offers only an unsupported allegation that Rochester offers "in-person, on-campus programs" and an "online learning program" without attempting to describe or distinguish them. Am. Compl. ¶ 52.

15

### 3. Plaintiff cannot identify any specific promise to provide on-campus resources or facilities.

Plaintiff's allegations offer even less support for his contention that Rochester promised to provide him with uninterrupted "access to physical resources and school facilities such as libraries, laboratories, and classrooms." Am. Compl. ¶ 23; *see id.* ¶ 9. Despite its scattered references to facilities, the Amended Complaint does not identify any contractual guarantee that the University would afford its students access to any particular facilities or resources for the Spring 2020 semester. The Amended Complaint offers no detail about what fees Plaintiff paid (or whether Plaintiff himself—as opposed to "students like Plaintiff"—in fact paid any), or what "facilities and equipment," specifically, Plaintiff claims were tied to those fees. *Id.* In short, Plaintiff fails to identify any "specific promise[]" concerning access to facilities that constitutes a term of the parties' implied contract. *Keefe*, 71 A.D.3d at 570.

Moreover, although Plaintiff vaguely alleges that the University generally makes certain "physical resources and school facilities" available to students in exchange for the payment of tuition and fees (*id.* ¶ 23), Plaintiff points to nothing that "guarantees unfettered, irrevocable access for [students] to the campus or its facilities." *Cheves v. Trustees of Columbia Univ.*, 89 A.D.3d 463, 464 (1st Dep't 2011). Without such a specific promise, Plaintiff cannot establish that the University promised him unqualified access to University facilities, even during a pandemic and government-ordered operational limitations, as a condition of the parties' contractual relationship.

### B. The Amended Complaint Does Not Plausibly Allege an Actionable Breach of Plaintiff's Spring 2020 Contract with Rochester.

Plaintiff's claim is also defective because he has not asserted and cannot credibly allege that the University acted arbitrarily, irrationally, or in bad faith in breach of any alleged promise by transitioning to online learning in the midst of a pandemic in Spring 2020. Under New York

law, the "essence" of the implied contract between a university and its students "is that an academic institution must act in good faith in its dealings with its students." *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 414 (N.Y. 1980). "[B]ecause the decisions made by educational institutions about academic standards involve the subjective judgment of professional educators, claims regarding such matters are subject to judicial review only to determine whether [the defendants] abided by their own rules, *and* whether they have acted in good faith or their action was arbitrary or irrational." *Clarke v. Trustees of Columbia Univ. of City of N.Y.*, No. 95 CIV. 10627 (PKL), 1996 WL 609271, at *6 (S.D.N.Y. Oct. 23, 1996) (quoting *Gertler*, 107 A.D.2d at 485) (emphasis added); *see Tiu-Malabanan v. Univ. of Rochester*, No. 07-CV-6499-CJS, 2008 WL 788637, at *5 (W.D.N.Y. Mar. 21, 2008) (Siragusa, J.). Thus, "[i]n order to plead an actionable breach, the student must show that the university 'acted in bad faith or in an arbitrary or irrational manner.'" *Hassan*, 2021 WL 293255, at *7 (quoting *Pell v. Trustees of Columbia Univ.*, 1998 WL 19989, at *20 (S.D.N.Y. Jan. 21, 1998) (Sotomayor, J.)).

In *Hassan v. Fordham University*, the Southern District of New York recently held that this "deferential standard" applies to allegations of breach "based on a failure to provide in-person services because of the COVID-19 pandemic and the related decision to retain tuition and fees." 2021 WL 293255, at *8. The *Hassan* court reasoned that such judicial restraint is appropriate because "[j]udicial scrutiny of these actions would require analysis of educators' judgments with respect to what may have been 'appropriate and necessary to [the university's] continued existence.'" *Id.* (quoting *Gertler*, 107 A.D.2d at 485). Applying these "deferential principles," the court dismissed the plaintiff's claim that his university breached a contract to provide in-person instruction where he failed to allege that the university acted arbitrarily, irrationally, or in bad faith by "transition[ing] to remote learning because of the COVID-19

17

pandemic and . . . retain[ing] tuition and other fees in spite of that transition." *Id.* at *9.

*Hassan's* deferential principles appropriately allow a New York university flexibility to comply with an implied contract to provide educational services by exercising its academic discretion in good faith. Similarly, in *Paynter v. New York University*, 319 N.Y.S.2d at 893, the plaintiff sought a tuition refund for instruction time claimed to have been lost when the defendant university suspended classes following the development of student anti-war protests. *See id.* at 893. The Appellate Term acknowledged that, "while in a strict sense, a student contracts with a college or university for a number of courses to be given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom." *Id.* at 894. Thus, notwithstanding the contractual relationship, higher-education institutions "have inherent authority to maintain order on their campuses," and may make reasonable adjustments to their instructional programs without breaching that contract. *Id.* The *Paynter* court concluded that, "[i]n the light of the events on the defendant's campus and in college communities throughout the country," "the court erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes for the time remaining in the school year." *Id.*

As *Paynter* demonstrates, even where a court finds that an implied contract gives rise to a specific contractual obligation, the university does not breach the implied contract by exercising its sound discretion in fulfilling that obligation, especially in response to unprecedented emergency circumstances. The university may exercise that discretion to safeguard the wellbeing of its students, as Rochester did in March 2020 at the outset of the pandemic. And Plaintiff's pleading concedes that Rochester exercised its discretion in good faith, as Plaintiff admits that "Rochester's decision to cease in-person instruction was warranted" (Am. Compl. ¶

3) and "consistent with safety measures" necessitated by the pandemic (*id.* ¶ 49). That concession is fatal to his breach allegations. *See Hassan*, 2021 WL 293255, at *9 (dismissing breach claim where complaint did not allege that the university "acted in bad faith when it suspended in-person classes and transitioned to remote learning," and instead made "clear that [it] made this transition 'because of' the COVID-19 pandemic").

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT FOR THE SPRING 2020 SEMESTER

Plaintiff's alternative claim, for unjust enrichment, should be dismissed because Plaintiff has not pleaded and cannot plead the elements of an unjust-enrichment claim.[10] "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). "When assessing considerations of equity and justice, courts generally consider, among other things, 'whether the defendant's conduct was tortious or fraudulent.'" *Hassan*, 2021 WL 293255, at *10 (quoting *Clark v. Daby*, 751 N.Y.S.2d 622, 624 (3d Dep't 2002)).

Far from alleging conduct that was tortious or fraudulent, Plaintiff's Amended Complaint acknowledges that the University's emergency transition to online learning partway through the Spring 2020 semester was a reasonable and justified response to the pandemic. *See* Am. Compl. ¶¶ 3 & 49. Indeed, Rochester's actions in pivoting quickly to provide remote instruction show that it "acted promptly in the face of the pandemic in order to continue educating its students." *Hassan*, 2021 WL 293255, at *11. Under these circumstances, Plaintiff fails to establish that

---

[10] In light of this Court's ruling in *Bergeron*, Rochester reserves for a later stage its argument that Plaintiff's unjust-enrichment claim merely duplicates his breach of contract claim. *See Bergeron*, 2020 WL 7486682, at *9.

equity and good conscience require the restitution he seeks.[11]

## III.   PLAINTIFF'S REQUEST FOR RELIEF FOR SEMESTERS FOLLOWING THE SPRING OF 2020 SHOULD BE DISMISSED

Plaintiff's claims for all semesters following the Spring of 2020 bear the same fatal flaws as his claims for that semester, and are even more baseless because, for each subsequent semester, the University and its students enter into new contractual arrangements that specifically identify and account for the disruptions caused by the COVID-19 pandemic.  In these new contracts, Rochester is clear that it does not promise entirely in-person instruction or unfettered access to on-campus resources.  In fact, Rochester promised just the opposite, repeatedly informing its community that it would offer instruction by online and multimodal means during the current 2020/2021 academic year.  Moreover, Plaintiff does not and cannot plausibly plead that the University breached any alleged promise by acting arbitrarily or in bad faith by making the minor adjustments to its academic programs that Plaintiff describes.

### A.  A Separate Implied Contract Governs Plaintiff's Claims Each Semester.

Plaintiff must establish the terms of his implied contract with the University applicable to each semester for which he seeks to recover.  To the extent that Plaintiff paid tuition and fees to attend Rochester for any semester other than Spring 2020 (which his Amended Complaint does not specifically allege), such payment was subject to a new implied contract, separate and distinct from the one he claims Rochester breached when it transitioned to online instruction during the Spring 2020 semester.

The existence of a separate implied contract governing each semester for which Plaintiff

---

[11] Tellingly, although Plaintiff pleads that he and other class members "paid monies due for tuition, fees, and related expenses" (Am. Compl. ¶ 68) and that Rochester "has retained tuition monies . . . and refuses to issue a corresponding tuition adjustment" (*id.* ¶ 69), he does not allege that the University retained his fee payments.  *See generally id.*  In fact, the University refunded prorated portions of certain fees paid by Plaintiff and others for the Spring 2020 semester.

4850-9870-7162

paid tuition is implicit in his pleading.  *See* Am. Compl. ¶ 43 ("Plaintiff and members of the

Class paid Rochester tuition in exchange for *a* full semester of in-person education") (emphasis

added); *id.* ¶ 74 ("tuition was intended to cover in-person educational services for the academic

semester").  The Amended Complaint also makes clear that the terms and conditions of the

contract governing Fall 2020 were specific to that semester.  *See, e.g.*, *id.* ¶¶ 36-42 (and

footnotes thereto).  Plaintiff's pleading is consistent with the conclusion reached by numerous

courts that a new contract is formed between a student and his university for each semester that

the student pays tuition.  *See, e.g.*, *Univ. of Miss. Med. Ctr. v. Hughes*, 765 So. 2d 528, 535

(Miss. 2000); *Aase v. State, S. Dakota Bd. of Regents*, 400 N.W.2d 269, 270 (S.D. 1987);

*Abbariao v. Hamline Univ. Sch. of Law*, 258 N.W.2d 108, 114 (Minn. 1977).

Because each semester is governed by a new contract, the Court must consider the

specific terms of that separate contract in evaluating the plausibility of Plaintiff's claim that the

University promised to provide "a full semester of in-person education" for semesters following

Spring 2020.  Am. Compl. ¶ 43.  Plaintiff cannot meet that standard.

### B. Rochester Did Not Promise a Full Semester of In-Person Education for Fall 2020, Nor to Access to Facilities for the Fall 2020 Semester.

Plaintiff's claim that Rochester promised him "a full semester of in-person education" for

the Fall 2020 semester (*id.* ¶ 43) fails because his stray references to in-person offerings are not

plausibly susceptible to the interpretation that he urges, and his distorted characterizations of

Rochester's statements about Fall 2020 are belied by the plain language of the specific

documents on which he relies.

Provost Clark's Message did not promise solely in-person instruction for the Fall 2020

semester, but rather "a mix of online and in-person instruction."  Clark Decl. Ex. B at 4.  While

Plaintiff points to references to the expected physical location of certain classes included in the

Fall 2020 Classroom Assignments as evidence that Rochester "promised" that those classes would be in-person (Am. Compl. ¶ 39), such references do not constitute a "specific promise" that contractually committed the University to provide only in-person educational services. *Hassan*, 2021 WL 293255, at \*6; *see also Gociman v. Loyola Univ. of Chicago*, No. 20 C 3116, 2021 WL 243573, at \*4 (N.D. Ill. Jan. 25, 2021) (same); *Lindner*, 2020 WL 7350212, at \*8 (same).

The documents that Plaintiff relies on not only demonstrate that the University *never* promised to provide Plaintiff with an entirely in-person educational experience for that semester, they show that Rochester specifically abjured any ability to offer a full semester of in-person education given the ongoing operational constraints imposed by the pandemic, and clearly disclose that Rochester intended to rely on online and multimodal instruction for the Fall 2020 semester. *See* Clark Decl. Ex. B & C. This failure of mutual assent to the alleged "promise" of an entirely in-person education is fatal to Plaintiff's contract claim.

Plaintiff also fails to plausibly allege that Rochester promised to provide him "access to physical resources and school facilities such as libraries, laboratories, and classrooms" for the Fall 2020 semester (Am. Compl. ¶ 23), let alone "unfettered, irrevocable access." *Cheves*, 89 A.D.3d at 464. In fact, Provost Clark's Message eviscerates any such claim, as it made clear that facility access would be restricted to address health and safety concerns.[12]

---

[12] *See, e.g.*, Clark Decl. Ex. B at 1 ("We're not going to be able to gather in large numbers in all our favorite spaces."); *id.* at 5 ("Schools, libraries, and dining facilities are developing specific plans for learning and shared spaces, including the safest ways for our students . . . to access materials and collections."); *id.* ("Occupancy in classrooms and common and shared areas must allow a minimum of 40 square feet per person," and "[t]he maximum occupancy in our dining facilities has been reduced by 50 percent."); *id.* ("Any research that can be done remotely will continue to be done so in order to keep buildings and office occupancy to a minimum.").

22

**C. The Amended Complaint Does Not Allege That Rochester Breached Any Specific Agreement with Plaintiff to Provide In-Person Instruction for the Fall 2020 Semester.**

Further, Plaintiff has not alleged his own assent to any purported "promise" of in-person instruction. Although Plaintiff contends that "[s]ome classes that were promised to be in-person on August 6, 2020" were later "changed to be provided in an online-only format" (Am. Compl. ¶ 39), and that "[s]ome classes were not provided at all" (*id.* ¶ 40), Plaintiff does not allege that *he* took, registered for, or was even aware of any such classes. The Northern District of Georgia recently held that a plaintiff's similar failure to allege that she participated in any class that the defendant held out as offered in-person was grounds for dismissal of her breach-of-contract claim. *See Doe v. Emory Univ.*, 1:20-cv-02002-TWT (N.D. Ga. Jan. 22, 2021), Doc. 44 at 14 ("there are no allegations that Plaintiff Doe was aware of the Defendant's alleged offer for in-person instruction of any classes, . . . or that any class she participated in held itself out as in-person before transitioning to virtual learning").

**D. The Amended Complaint Does Not Plausibly Allege an Actionable Breach of Plaintiff's Fall 2020 Contract with Rochester.**

Even assuming Rochester promised an all in-person education for the Fall 2020 semester, which it did not, Plaintiff does not plausibly allege any breach under New York law applicable to educational institutions. Plaintiff cannot establish that Rochester failed to provide exactly what it promised: "a mix of online and in-person instruction." Clark Decl. Ex. B at 4. Plaintiff alleges only that "[s]ome" classes were not offered in-person as originally contemplated, implying that others were offered in-person. Am. Compl. ¶ 39. With respect to facilities and other in-person resources that might be covered by the payment of fees (which he does not claim to have paid for the Fall 2020 semester), Plaintiff does not identify any such facility or resource that was unavailable to him for the Fall 2020 semester.

Plaintiff's allegation of a breach also fails as a matter of law because, as with his Spring 2020 semester claims, Plaintiff does not allege any basis to find (or even suggest) that Rochester ever acted in bad faith. *See Hassan*, 2021 WL 293255, at *7. Plaintiff does not (and cannot) allege that Rochester acted in bad faith in providing a mix of online and in-person classes for Fall 2020, or by making scheduling and other logistical modifications necessary to protect the health and safety of its students, staff, and community during the ongoing pandemic. *See id.*; *see also Paynter*, 319 N.Y.S.2d at 894.

### E. The Amended Complaint Likewise Fails to Plead a Cognizable Unjust-Enrichment Claim for the Fall 2020 Semester.

The Amended Complaint establishes no basis from which the Court can conclude that equity and good conscience require restitution. Rochester announced a mix of online and in-person instruction and significant restrictions on the use of facilities for the Fall 2020 semester, yet Plaintiff now claims that equity entitles him to recover even though Rochester delivered exactly what it promised. But he does not allege any conduct that is tortious or fraudulent (*see Hassan*, 2021 WL 293255, at *10), and the Amended Complaint pleads no facts to explain why good conscience would require the University to forfeit the tuition and fees it collected for providing the hybrid, multimodal educational experience that it advertised to allow students such as Plaintiff to pursue and continue their Rochester educations—even as a pandemic persists in upending many facets of life and interpersonal interactions in this country.

### F. Plaintiff's Claims Regarding All Other Semesters Following Spring 2020 Must Be Dismissed.

Although Plaintiff purports to seek relief for himself and the putative class for "each subsequent semester" following Spring 2020 "and continuing until Rochester resumes in-person classes" (Am. Compl. ¶ 54), the Amended Complaint fails to state any factual allegations in support of such claims. The Amended Complaint mentions the Summer 2020 semester in

24

passing, but pleads no facts about that term other than that Rochester offered "online learning options" that Plaintiff concedes were "consistent with safety measures" necessitated by the pandemic. *Id.* ¶ 49. Particularly, the Amended Complaint makes no specific reference to the current Spring 2021 semester, when Rochester has made clear that it anticipates continuing to deliver educational content through a mix of in-person and online instruction, as circumstances and health mandates permit, nor to any other semester thereafter. Plaintiff thus fails to establish any of the elements of a plausible claim with respect to any semesters following the Spring 2020 semester, and those claims must be dismissed as well.

## <u>CONCLUSION</u>

For the foregoing reasons, Rochester respectfully requests that the Court dismiss, with prejudice, all claims of Plaintiff's Amended Complaint in their entirety.

Dated: February 5, 2021
      Rochester, New York

**NIXON PEABODY LLP**

By: /s/ Richard A. McGuirk
    Richard A. McGuirk
    W. Daniel Deane *(Notice of Appearance to be filed)*
    Kacey Houston Walker *(Notice of Appearance to be filed)*
    Steven M. Richard *(Pro Hac Vice to be filed)*

    1300 Clinton Square
    Rochester, New York 14604
    Tel.: (585) 263-1644
    rmcguirk@nixonpeabody.com
    *Attorneys for Defendant University of Rochester*