### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| DANIEL CARSTAIRS, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 20-CV-06690-CJS |
| UNIVERSITY OF ROCHESTER, | ) ) | |
| Defendant. | ) ) | |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................... iii

SUMMARY OF ALLEGED FACTS..................................................................... 2

I.      Rochester Promised On-Campus Classes of a Certain Length ........................... 3

II.     Rochester Promised On-Campus Access and Services........................................ 4

III.    Rochester Ceased On-Campus Classes and Services ......................................... 7

ARGUMENT ......................................................................................................... 7

I.      Breach of Contract .......................................................................................... 7

        A.    The Contract is Stated in the Catalog and Other Publications................................ 7

        B.    Rochester Promised Classes of a Certain Length .................................... 7

        C.    Rochester Promised On-Campus Classes ............................................... 8

              1.    Rochester's Dispute of Its Classroom Assignments (Rochester Exhibit C)................................................................. 9

              2.    Rochester's Dispute of Its Credit Hour Policy (Rochester Exhibit A) ..... 11

              3.    Rochester's Dispute of Its Faculty Handbook and Personnel Policy ....... 12

        D.    Rochester Promised Access to On-Campus Resources and Facilities ................. 14

        E.    Rochester is Liable for Its Breach........................................................... 17

II.     Unjust Enrichment .......................................................................................... 21

III.    Semesters Following Spring 2020 Semester....................................................... 22

        A.    Each Semester, Rochester Promised In-Person Classes ........................................ 22

        B.    Plaintiff Enrolled in In-Person Classes.................................................... 23

        C.    Rochester's Breach and Unjust Enrichment............................................ 24

i

D.    Rochester Provides Insufficient Justification to Dismiss Post-Spring 2020
          Semesters ................................................................................................................ 24

CONCLUSION ............................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>CASES</u>

*407 E. 61st Garage, Inc. v. Savoy Fifth Avenue Corp.*,
   23 N.Y.2d 275 (1968) ...............................................................................................18

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012)....................................................................................25

*Ansari v. New York Univ.*,
   No. 96 CIV. 5280 (MBM), 1997 WL 257473 (S.D.N.Y. May 16, 1997) ..................15, 16, 21

*Bahrani v. Ne. Univ.*,
   2020 WL 7774292 (D. Mass. Dec. 30, 2020) ....................................................1, 22

*Baldridge v. State*,
   293 A.D.2d 941, 740 N.Y.S.2d 723 (2002) ..............................................................9

*Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*,
   692 F.3d 42 (2d Cir. 2012)......................................................................................13

*Bergeron v. Rochester Inst. of Tech.*,
   2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020)........................................1, 16, 17, 22

*In re: Boston Univ. COVID-19 Refund Litig.*,
   2021 WL 66443 (D. Mass. Jan. 7, 2021) ........................................................1, 9, 22

*CAI Rail, Inc. v. Badger Mining Corp.*,
   No. 20 CIV. 4644 (JPC), 2021 WL 705880 (S.D.N.Y. Feb. 22, 2021)...................18

*Cheves v. Trustees of Columbia Univ.*,
   931 N.Y.S.2d 877 (2011)........................................................................................16

*Chong v. Ne. Univ.*,
   2020 WL 7338499 (D. Mass. Dec. 14, 2020)..................................................1, 9, 22

*Clarke v. Trustees of Columbia Univ. of City of New York*,
   1996 WL 609271 (S.D.N.Y. Oct. 23, 1996)...........................................................19

*Clogher v. New York Med. Coll.*,
   976 N.Y.S.2d 198 (2013) ........................................................................................................20

*Cross v. Univ. of Toledo*,
   2020 WL 4726814 (Ohio Ct. Cl., July 8, 2020) ............................................................1, 13, 22

*Deen v. New Sch. Univ.*,
   2007 WL 1032295 (S.D.N.Y. Mar. 27, 2007) ......................................................7, 15, 19, 21

*Doe v. Bradley Univ.*,
   2020 WL 7634159 (C.D. Ill. Dec. 22, 2020) ..............................................................1, 8, 9, 16

*Eidlisz v. New York Univ.*,
   876 N.Y.S.2d 400 (2009) ........................................................................................................20

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ..................................................................................................................24

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019) .........................................................................................................2

*Ford v. Rensselaer Polytechnic Inst.*,
   No. 1:20-CV-470, 2020 WL 7389155 (N.D.N.Y. Dec. 16, 2020) .................................. *passim*

*Garland v. Western Michigan Univ.*,
   2020 Mich. Ct. Cl. LEXIS 7 (Mich. Ct. Cl. Sept. 15, 2020) .....................................................2

*Gertler v. Goodgold*,
   107 A.D.2d 481, 487 N.Y.S.2d 565, *aff'd*, 66 N.Y.2d 946, 489 N.E.2d 748 (1985)...............19

*Gibson v. Lynn Univ., Inc.*,
   2020 WL 7024463 (S.D. Fla. Nov. 29, 2020)................................................................2, 13, 22

*Gibson v. Lynn Univ., Inc.*,
   2021 WL 1109126 (S.D. Fla. Mar. 23, 2021)...................................................................2, 25

*Gociman v. Loyola Univ. of Chicago*,
   2021 WL 243573 (N.D. Ill. Jan. 25, 2021) .............................................................................23

*Grant v. Chapman Univ.*,
   2021 WL 684581, 2021 Cal. Super. LEXIS 3 (Cal. Super. Jan. 22, 2021) ..........................2, 9

*Hassan v. Fordham Univ.*,
   2021 WL 293255 (S.D.N.Y. Jan. 28, 2021) .........................................................9, 19, 22, 23

iv

*Hiatt v. Brigham Young Univ.*,
  2021 WL 66298 (D. Utah Jan. 7, 2021)................................................................2, 17

*Holmes v. Univ. of Massachusetts*,
  No. 2084CV01025-B (Sup. Ct. Mass. Mar. 8, 2021) .................................................2

*Jeffers v. Am. Univ. of Antigua*,
  93 N.Y.S.3d 36 (2019).........................................................................................15, 20

*Keba v. Bowling Green State Univ.*,
  No. 2020-00639JD (Ct. Claims Ohio Mar. 10, 2021) ................................................2

*Kishinevsky v. Univ. of Denver*,
  2020 WL 7087313 (Colo. Dist. Ct. Nov. 23, 2020) ...................................................2

*Lindner v. Occidental Coll.*,
  2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) ..........................................................23

*Little v. Grand Canyon Univ.*,
  2021 WL 308940 (D. Ariz. Jan. 29, 2021) .................................................................2

*McCarthy v. Loyola Marymount Univ.*,
  2021 WL 268242 (C.D. Cal. Jan. 8, 2021) .................................................................2

*McDermott v. The Ohio State Univ.*,
  2020 WL 5239892 (Ohio Ct. Cl. July 8, 2020) ....................................................2, 13

*Mellowitz v. Ball State Univ.*,
  2020 Ind. Super. LEXIS 854 (Marion Sup. Ct. Civil Div. 14 Aug. 12, 2020) ..........2

*Milanov v. Univ. of Mich.*,
  2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. July 27, 2020)........................................2

*Moran v. Stonehill Coll., Inc.*,
  2021 WL 965754 (Mass. Super. Feb. 16, 2021)................................................2, 9, 17

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
  102 F.3d 660 (2d Cir. 1996).....................................................................................14

*Novio v. New York Acad. of Art*,
  317 F. Supp. 3d 803 (S.D.N.Y. 2018)..........................................................15, 19, 21

*Ocasio-Hernandez v. Fortuno-Burset*,
  640 F.3d 1 (1st Cir. 2011)........................................................................................12

*Olsson v. Bd. of Higher Ed.*,
49 N.Y.2d 408 (1980) ................................................................................................ 18-19

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015) ........................................................................................7, 8

*Paladino v. Adelphi Univ.*,
454 N.Y.S.2d 868 (1982) ...............................................................................................8

*Patel v. Univ. of Vermont*,
2021 WL 1049980 (D. Vt. Mar. 15, 2021) ...........................................................2, 9, 13, 20

*Paynter v. New York Univ.*,
319 N.Y.S.2d 893 (App. Term 1971) ...............................................................................20

*Pell v. Trustees of Columbia Univ. in City of New York*,
1998 WL 19989 (S.D.N.Y. Jan. 21, 1998) .........................................................................19

*Rhodes v. Embry-Riddle Aeronautical Univ.*,
2021 WL 140708 (M.D. Fla. Jan. 14, 2021) ...............................................................2, 12, 17

*Rosado v. Barry Univ.*,
2020 WL 6438684 (S.D. Fla. Oct. 30, 2020) .........................................................2, 9, 12, 13, 18, 22

*Ross v. Creighton Univ.*,
957 F.2d 410 (7th Cir. 1992) ..........................................................................................7

*Salerno v. Florida So. Coll.*,
2020 WL 5583522 (M.D. Fla. Sept. 16, 2020) ...........................................................2, 9, 13, 17, 22

*Saroya v. Univ. of the Pac.*,
2020 WL 7013598 (N.D. Cal. Nov. 27, 2020) ...........................................................2, 9, 13

*Seslar v. Trustees of Purdue Univ.*,
No. 79D02-2005-PL-000059 (Sup. Ct. Ind., Mar. 8, 2021) ........................................................2

*Smith v. The Ohio State Univ.*,
2020 WL 5694224 (Ohio Ct. Cl., Sept. 9, 2020) ...........................................................2, 13

*Spear, Leeds & Kellogg v. Central Life Assur. Co.*,
85 F.2d 21 (2d Cir. 1996) ..............................................................................................14

*Spiegel v. Trustees of Indiana Univ.*,
2020 Ind. Cir. LEXIS 388 (Monroe Cir. Ct. Nov. 19, 2020) .....................................................2

vi

*Tedeschi v. Wagner Coll.*,
49 N.Y.2d 652 (1980) ................................................................................................21

*Tiu-Malabanan v. Univ. of Rochester*,
2008 WL 788637 (W.D.N.Y. Mar. 21, 2008).........................................................19

*In re Univ. of Miami COVID-19 Tuition and Fee Refund Litig.*,
No. 0-20-cv-60851-AHS (S.D. Fla. Mar. 5, 2021) ..................................................2

*Verlanga v. Univ. of San Francisco*,
2020 Cal. Super. LEXIS 1785 (Cal. Sup. Ct. Nov. 12, 2020) .................................2

*Village Community School v. Adler*,
478 N.Y.S.2d 546, 548 (Civ. Ct. 1984) .................................................................20

*Waitt v. Kent State Univ.*,
2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020) ...............................................2, 13

*Zahn v. Ohio Univ.*,
2020 WL 6163919 (Ohio Ct. Cl. Oct. 19, 2020) ....................................................2

## OTHER AUTHORITIES

Restatement (Second) of Contracts (1981).................................................1, 12, 14, 18

The COVID-19 pandemic affected everyone – schools and its students are no exception.

As Judge Hurd observed in a similar COVID college tuition and fee suit:

> [T]hough [the college] may have been in an impossible position, plaintiffs did not ask for their lives to be disrupted on a mass scale either. The purpose of this litigation is not to apportion blame. It is only to ensure that the hardship imposed by the present state of the world falls justly.

*Ford v. Rensselaer Polytechnic Inst.*, No. 1:20-CV-470, 2020 WL 7389155, at *11 (N.D.N.Y. Dec. 16, 2020) (denying school judgment on pleadings).

This suit does not compare hardships or cast the University of Rochester as the villain. Plaintiff simply seeks a return of pre-paid tuition and fees for in-person services that Rochester did not provide. Even in a pandemic, one party may not keep full contract benefits for only partial performance. *See* Restatement (Second) of Contracts § 377 (1981) (providing restitution in cases of impracticability of contractual performance).

Halfway through the Spring 2020 semester, a world-wide pandemic led Rochester to shut down its campus and cancel all in-person classes. Am. Compl. ("AC") at ¶¶ 2, 5 (ECF 12). It taught some courses online, but others not at all. *Id.* at ¶¶ 13, 40. Though Rochester charged far less for online courses, it continued to demand students pay for in-person courses they never received. *Id.* at ¶¶ 7, 9. That is a breach of contract or, alternatively, unjust enrichment.

The overwhelming majority of cases addressing similar COVID college tuition suits have held such allegations are cognizable and should be heard.[1]

---

[1]    *See, e.g., Bahrani v. Ne. Univ.,* 2020 WL 7774292 (D. Mass. Dec. 30, 2020); *Bergeron v. Rochester Inst. of Tech.*, 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020); *In re: Boston Univ. COVID-19 Refund Litig.*, 2021 WL 66443 (D. Mass. Jan. 7, 2021); *Chong v. Ne. Univ.,* 2020 WL 7338499 (D. Mass. Dec. 14, 2020) ("*Chong II*"); *Cross v. Univ. of Toledo*, 2020 WL 4726814 (Ohio Ct. Cl., July 8, 2020); *Doe v. Bradley Univ.*, 2020 WL 7634159 (C.D. Ill. Dec. 22, 2020) ("*Bradley*");

## SUMMARY OF ALLEGED FACTS

Rochester is a prestigious private institution of higher learning. AC at ¶ 1. Even before the

pandemic, Rochester offered students both online and in-person courses, identifying them in its

course catalog. *Id.* at ¶¶ 5, 24, 53. Though Rochester's online offerings were much cheaper, *id.,*[2]

Plaintiff chose the pricier in-person courses, pre-paying more than $55,000 a year in tuition plus

---

*Garland v. Western Michigan Univ.*, 2020 Mich. Ct. Cl. LEXIS 7 (Mich. Ct. C1. Sept. 15, 2020); *Gibson v. Lynn Univ., Inc.*, 2020 WL 7024463 (S.D. Fla. Nov. 29, 2020) ("*Gibson I*"); *Gibson v. Lynn Univ., Inc.*, 2021 WL 1109126 (S.D. Fla. Mar. 23, 2021) ("*Gibson II*"); *Grant v. Chapman Univ.*, 2021 WL 684581, 2021 Cal. Super. LEXIS 3, (Cal. Super. Jan. 22, 2021); *Hiatt v. Brigham Young Univ.*, 2021 WL 66298 (D. Utah Jan. 7, 2021); *Holmes v. Univ. of Massachusetts,* No. 2084CV01025-B (Sup. Ct. Mass. Mar. 8, 2021); *Keba v. Bowling Green State Univ.*, No. 2020-00639JD (Ct. Claims Ohio Mar. 10, 2021); *Kishinevsky v. Univ. of Denver*, 2020 WL 7087313 (Colo. Dist. Ct. Nov. 23, 2020); *Little v. Grand Canyon Univ.*, 2021 WL 308940 (D. Ariz. Jan. 29, 2021); *In re Univ. of Miami COVID-19 Tuition and Fee Refund Litig.*, No. 0-20-cv-60851-AHS (S.D. Fla. Mar. 5, 2021) (ECF 67); *McCarthy v. Loyola Marymount Univ.*, 2021 WL 268242 (C.D. Cal. Jan. 8, 2021); *McDermott v. The Ohio State Univ.*, 2020 WL 5239892 (Ohio Ct. Cl. July 8, 2020); *Mellowitz v. Ball State Univ.*, 2020 Ind. Super. LEXIS 854 (Marion Sup. Ct. Civil Div. 14 Aug. 12, 2020); *Milanov v. Univ. of Mich.*, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. July 27, 2020); *Moran v. Stonehill Coll., Inc.*, 2021 WL 965754 (Mass. Super. Feb. 16, 2021); *Patel v. Univ. of Vermont*, 2021 WL 1049980 (D. Vt. Mar. 15, 2021); *Rhodes v. Embry-Riddle Aeronautical Univ.*, 2021 WL 140708 (M.D. Fla. Jan. 14, 2021); *Rosado v. Barry Univ.*, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020); *Salerno v. Florida So. Coll.*, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020); *Saroya v. Univ. of the Pac.*, 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020); *Seslar v. Trustees of Purdue Univ.*, No. 79D02-2005-PL-000059 (Sup. Ct. Ind., Mar. 8, 2021); *Smith v. The Ohio State Univ.*, 2020 WL 5694224 (Ohio Ct. Cl., Sept. 9, 2020); *Spiegel v. Trustees of Indiana Univ.*, 2020 Ind. Cir. LEXIS 388 (Monroe Cir. Ct. Nov. 19, 2020); *Verlanga v. Univ. of San Francisco*, 2020 Cal. Super. LEXIS 1785 (Cal. Sup. Ct. Nov. 12, 2020); *Waitt v. Kent State Univ.*, 2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020); *Zahn v. Ohio Univ.*, 2020 WL 6163919, at *3 (Ohio Ct. Cl. Oct. 19, 2020).

[2]     Impermissibly disputing Plaintiff's allegations in its motion to dismiss, Rochester insists that "the University does not charge less for online courses than for in-person courses." Mem. at 3 (emphais in original) (contending that Rochester charges high school students $503 for online music courses).

Indeed, Rochester charged even less than $503 for online undergraduate science courses. See Rochester, Online Prerequisite Courses (stating tuition for online courses in sciences as $287-384 per credit hour, or $1,150 per course, *available at* https://tinyurl.com/UR-Online-Prereq-Courses (website as of Nov. 15, 2019). This Court may take judicial notice of promises made in Rochester's publications. *Force v. Facebook, Inc*., 934 F.3d 53, 60 n.5 (2d Cir. 2019) (taking judicial notice of defendant's website).

additional fees for the traditional on-campus educational experience. *Id.* at ¶¶ 4, 20, 23-24.

## I.    Rochester Promised On-Campus Classes of a Certain Length

In exchange for tuition and fees, Rochester promised Plaintiff courses that were to be taught

at a specified on-campus location and for a specified length of time.[3]



AC at ¶ 24 (encircled emphasis added). Rochester made similar promises in its course catalog for

every semester. *See* Course Catalog.[4] For Fall 2020 semester, its "Classroom Assignments"

(Mem. Ex. C, ECF 15-4) again promised certain courses were to be provided "IN PERSON."



AC at ¶ 39 n.11, Mem. Ex. C.

Importantly, courses could not be moved online unless the online format was tested, reviewed,

approved, and communicated to students before course registration. AC at ¶¶ 25-26; Eastman

School of Music Guidelines for Online Course Development ("To ensure that students have full

information about the format of each course as they make registration decisions, departments will

make decisions at least a semester in advance, and include that information as we publish the

---

[3]    In alleging Rochester's promises with such specificity, Plaintiff does not contend that Rochester would be in breach by providing a class online for one day, or moving a class from room 104 to room 106. Such changes would be *de minimis.*

[4]    *Available for search at* https://cdcs204.ur.rochester.edu/Default.aspx.

course schedule.");[5] Rochester Credit Hour Policy and Compliance ("Each school has a faculty curriculum committee that reviews proposed new and revised courses. . .").[6]

Rochester confirmed in-person promises in other publications. For example, its Credit Hour Policy promises fifteen hours of "classroom or direct faculty instruction" per credit hour. AC at ¶ 25. Regarding the Summer 2020 term, Rochester promises, "Over 75 courses are offered ***on campus*** that span the curriculum. . ." Undergraduate Handbook at 60 (emphasis added).[7]

Rochester's Faculty Handbook required faculty obtain permission before departing campus for more than one week because "[t]he absence of individual faculty members from campus interferes with the educational program of students and deprives colleagues of important intellectual stimulation." AC at ¶ 46, quoting 2020 University of Rochester Faculty Handbook at 44.[8] "Under Rochester's personnel policy, ***even to prevent contagion,*** telecommuting was no substitute for physical presence." *Id.* at ¶ 26 (emphasis added); Personnel Policy/Procedure 324.[9]

## II.   Rochester Promised On-Campus Access and Services

While some students choose online colleges like the University of Phoenix, others like Plaintiff seek the traditional, on-campus university experience and are willing to invest in the eye-popping tuition and fees. Schools like Rochester have spent untold billions building a dazzling campus and marketing the classic university program to woo these students.

---

[5]     *Available at* https://tinyurl.com/UR-Online-Course-Dev (last viewed Mar. 24, 2021).

[6]     *Available at* https://tinyurl.com/UR-Credit-Hour-Policy (last viewed Mar. 24, 2021).

[7]     *Available at* https://tinyurl.com/UR-19-20-Undergrad-Handbook (last viewed Mar. 18, 2021).

[8]     2020 Faculty Handbook at 44, *available at* https://tinyurl.com/UR-FacultyHandbook-2020 (website as of Sept. 28, 2020).

[9]     Personnel Policy, Reassignment/Absence to Prevent Contagion, *available at* https://tinyurl.com/UR-PP-2019 (website as of June 10, 2019).

Rochester does not just promise an on-campus experience; it *requires* one. "Incoming first years are required to live on campus." Undergraduate Admissions, Campus Life.[10] Graduate students wishing to study "at a location away from campus" must submit a written request. Graduate Studies Regulations and Policies at 3.[11]

Rochester promised access to a number of on-campus opportunities, services, and facilities in its marketing, handbooks, and elsewhere.[12] As just a few examples:

- "The campus offers nearly unlimited opportunities for you—both in and out of class—to sharpen your skills and develop new interests." First Year Academic Handbook at 4. *See also* Undergraduate Student Handbook at 16.

- "Students can explore industries by participating in alumni networking events and attending on- and off-campus programming . . ." First Year Academic Handbook at 92. *See also* Undergraduate Student Handbook at 74-75.

- "The libraries provide a variety of spaces . . . There is even a balcony overlooking the quadrangle for the glorious days of fall and spring! The Gleason Library . . . is known for its moveable furniture, white boards, and collaborative study areas. There is also a quieter room with comfortable furniture. You can study in Gleason Library 24 hours a day, seven days a week during the semester." Undergraduate Student Handbook at 51-52. Rochester closed Gleason Library on March 18, 2020.[13]

- Genesee Hall "features meeting rooms, study rooms and event space for use by the entire campus community." Undergraduate Student Handbook at 55.

---

[10] Undergraduate Admissions, Campus Life, *available at* https://enrollment.rochester.edu/campus-life/ (last viewed Mar. 12, 2021). *See also* Guide to Residential Living at 5 ("[L]iving on-campus is important to the successful development of UR students. Residential Life does not anticipate releasing first-year students from the sophomore year of the housing requirement."), *available at* https://tinyurl.com/UR-Campus-Manual (last viewed Mar. 12, 2021).

[11] *Available at* https://tinyurl.com/UR-Grad-Regs (website as of Mar. 29, 2020).

[12] As far as Plaintiff can tell, Rochester has not published handbooks for 2020-2021 academic year that contradict promises made in the 2019-2020 handbooks.

[13] Gleason Library, COVID-19 Update, *available at* https://tinyurl.com/UR-Gleason-Closed (website as of June 1, 2020).

- "The University of Rochester offers a first class dining program with campus restaurants varied in style . . ." *Id.* at 44. *See also id.* at 45 ("a one of a kind eating experience on campus," "our latest dining location on campus").

- "A variety of academic support services are available on campus." Undergraduate Student Handbook at 37. *See also id.* at 51 ("Get help whenever and wherever you need it! Librarians and library staff are available by phone, email, our online chat service, and in person at any Q&i desk."); First Year Handbook at 89 ("For more information about face-to-face and online tutoring services, please visit our website . . .").

- "Alcohol and Other Drug Education . . . plans, implements and evaluates prevention programming on campus which aim to decrease the negative impact that alcohol/other drug use can have on our community." *Id.* at 59.

In return for students' payment of fees, Rochester promised a number of specific on-campus resources, facilities, events, and services. For example, Rochester charged Plaintiff lab fees, but provided fewer than half of the laboratory classes provided. AC at ¶ 41. Rochester charged students a "mandatory health fee [which] assures the availability of accessible, high quality health care services **on campus** . . ." Student Health Program (emphasis added).[14] Rochester charged activity fees for a variety of in-person events that were not held. *See, e.g.,* Undergraduate Handbook at 25 (describing monthly networking event "held on campus").

By the time Plaintiff accepted Rochester's offer and shelled out $27,520 a semester in tuition, he knew exactly what he was getting: an "inspiring place to grow and learn" on Rochester's "tight-knit campuses." AC at ¶ 27. *See also id.* at ¶ 28 ("900+ concerts," including programs at Rochester's famed Eastman School of Music, "275 student clubs and organizations," "sports leagues, athletic facilities, and fitness classes," etc.).

---

[14]     *Available at* https://tinyurl.com/UR-Health-Fee (last viewed Mar. 18, 2021)

### III.    Rochester Ceased On-Campus Classes and Services

On March 11, 2020, Rochester announced it was canceling in-person classes due to the COVID-19 pandemic. AC ¶ 1. It also shut down its campus, closing facilities and ending on-campus services. *Id.* at ¶ 32, 39, 40, 42-43. Its closure continues today.

### ARGUMENT

### I.    Breach of Contract

#### A.    The Contract is Stated in the Catalog and Other Publications

Under New York law, "[t]he terms of the contract between university and student include the rights and obligations of the parties stated in the university's catalogue and other publications." *Deen v. New Sch. Univ.*, No. 05 CIV. 7174 KMW, 2007 WL 1032295, at *2 (S.D.N.Y. Mar. 27, 2007) (denying summary judgment to school in breach of contract claim based on promises made in catalog). *See also Ford*, 2020 WL 7389155 (denying judgment to school given promises made in catalog); *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992) (reversing dismissal of student's contract claim; "The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract. Indeed, there seems to be 'no dissent' from this proposition.") (cleaned up).

A plain reading of the catalog shows Rochester promised to provide classes (a) of a certain length, and (b) at an on-campus location. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 295 (2d Cir. 2015) (a contract's "words and phrases should be given their plain meaning.") (cleaned up).

#### B.    Rochester Promised Classes of a Certain Length

Rochester's catalog promised courses of a certain length. Yet, as Plaintiff alleges, Rochester stopped providing *any* instruction – online or otherwise – for some courses. AC at ¶¶ 13,

34, 40. Rochester's breached promise falls squarely within what New York deems to be an enforceable contract. *See, e.g., Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 873 (1982) ("if the contract with the school were to provide for certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable.").

In its brief, Rochester does not respond to Plaintiff's allegation that it promised classes of a certain length. Rochester thus waived any arguments challenging these allegations.

### C.   Rochester Promised On-Campus Classes

Rochester argues that it is unreasonable to interpret a catalog stating a class would be taught on-campus as implying that the class would be taught on-campus. Mem. at 12-14. Yet Rochester points to no contractual ambiguity. It cites no conflicting contractual language. Instead, it simply insists that it didn't really *mean* the class's listed on-campus location. Mem. at 13. But a contracting party can't simply profess its subjective belief that the express words should be ignored. Each contract term is to be given meaning. *Orlander,* 802 F.3d at 295(a a "contract should be construed so as to give full meaning and effect to all of its provisions.").

Courts in other COVID college tuition suits have overwhelmingly held that similar course catalogs state a promise for in-person classes. *Bradley*, 2020 WL 7634159 at *2 ("Courts have largely denied universities' motions to dismiss on nearly identical breach of contract claims because they found there were sufficient facts to allege a contract for in-person instruction based on university handbooks, catalogs, and brochures."); *Salerno*, 2020 WL 5583522, at *2 (denying motion to dismiss given allegations of "course portal" identifying days, times, and location of

courses); *Chong II*, 2020 WL 7338499, *3 (same, for course registration materials indicating instruction at campus locations); *Rosado*, 2020 WL 6438684, at *1 (same); *Grant*, 2021 Cal. Super. LEXIS 3, at *9-10 (same); *Saroya*, 2020 WL 7013598, at *5 (same); *Bradley*, 2020 WL 7634159, at *2 (same); *In re Boston U.,* 2021 WL 66443, at *2 (same); *Patel*, 2021 WL 1049980, at *7 (same). *See also Moran*, 2021 WL 965754, at *5 (denying motion to dismiss; "Stonehill specifically offers the option of in-person, on-campus instruction for one price, and a separate, less expensive online instruction option.").

Rochester gets no relief from *Hassan*. Mem. at 13-14.[15]  At most, *Hassan* held that a course catalog alone was insufficient when "there are no express statements promising that these aspects of a course were not subject to change."   *Hassan v. Fordham Univ.*, No. 20-CV-3265 (KMW), 2021 WL 293255, at *6 (S.D.N.Y. Jan. 28, 2021). Here, however, Rochester promised that courses would not be moved online unless the online format was pre-approved and communicated to students before registration. AC at ¶ 26; *supra* at nn. 5-6 (Guidelines for Online Course Development and Credit Hour Policy).

### 1.    *Rochester's Dispute of Its Classroom Assignments (Rochester Exhibit C)*

Rochester then disputes the facts, claiming that its Exhibit C (ECF 15-4) "demonstrates the distinction" between a course's location and its format. Mem. at 13 n.7.

Rochester is simply wrong. When Exhibit C identified a course as being taught online,

---

[15]    Rochester also cites *Baldridge* to no avail. Mem. at 13. *Baldridge* granted summary judgment to the school only after uncontroverted evidence established that the school performed its promise to provide an advisor. *Baldridge v. State*, 293 A.D.2d 941, 943, 740 N.Y.S.2d 723 (2002). Here, on a motion to dismiss, Rochester has not and cannot provide evidence that it performed its promise to provide in-person classes.

| Section | | Instructional Format | Meeting Patterns | Locations | STATUS? |
|---|---|---|---|---|---|
| AAAS 106-1 - The Making of Modern Africa | … | Lecture | Mon/Wed \| 2:00 PM - 3:15 PM | Lechase Room 141 | ONLINE |

Mem. Ex. C (first line), the course catalog *also* identified the course's location as "online."[16]

| Course | Course Title | | | | Term | Credits | Status |
|---|---|---|---|---|---|---|---|
| AAAS 106-1 | The Making of Modern Africa | | | | Fall 2020 | 4.0 | Open |
| **Schedule:** | Day | Begin | End | Location | Start Date | End Date | |
| | MW | 1400 | 1515 | Online Room 5 (LASE) | 08/26/2020 | 12/18/2020 | |

Course Catalog, Fall 2020 AAAS 106-1, *available for search at* https://cdcs.ur.rochester.edu

(last viewed March 11, 2021) (encircled emphasis added).

To be sure: Rochester did not promise AAAS 106-1 would be taught in-person, and Plaintiff does not claim breach of contract for in-person classes as to that course. However, Rochester promised *other* classes would be taught in-person, and breached its promise.

For example, in even Rochester's Exhibit C, Rochester explicitly promised that certain Fall 2020 classes were to be held "IN PERSON."



| AAAS 200-1 - Cltrl Politics Prison Towns | … | Lecture | Wednesday \| 9:00 AM - 11:40 AM | Lattimore Room 441 | IN PERSON |

Mem. Ex. C at 3; AC at ¶ 39 n.11 (image edited for size, immaterial columns omitted).

Despite Rochester's explicit promise for an in-person Fall 2020 AAAS 200-1 course, it was instead held online. AC at ¶ 39 n.11. Thus, Rochester was in breach.

Rochester tries to downplay its "IN PERSON" promises, asserting that Exhibit C "contained no fewer than 1,036 references to 'online' coursework." Mem. at 9. But Exhibit C

---

[16]    That is, Rochester's Exhibit C indicated the online format in the "status" field, whereas the catalog indicates the online format in the "location" field. Rochester seizes upon Exhibit C's listing of a separate room "location," but Exhibit C clarified that they were preliminary; "Room locations will change for a number of courses as the Registrar's Office modifies current assignments to allow for social distancing." Mem. Ex. C at 2 (ECF pagination).

contains far more promises of "IN PERSON" courses – 1,444. Rochester also contends that Exhibit C's "IN PERSON" courses "can be assumed to have an online equivalent." Mem. at 9. Rochester is free to present evidence supporting this assumption (and what it means), but it does not change the fact that the courses were promised to be taught "IN PERSON."

### 2. *Rochester's Dispute of Its Credit Hour Policy (Rochester Exhibit A)*

Regarding the Credit Hour Policy, which promises fifteen hours of "classroom or direct faculty instruction" per credit hour, Rochester attempts misdirection. Rochester misquotes the Credit Hour Policy as stating that online courses "shall be 'equivalent to its face-to-face counterpart.'" Mem. at 12, quoting Mem. Ex. A at 2. Rochester takes this as proof that its online courses were in fact equivalent. *Id.*

In fact, the Credit Hour Policy promises that Rochester is "*committed to making* each online course equivalent to its face-to-face counterpart." Mem. Ex. A at 2 (emphasis added). That is, online courses are not inherently equivalent to in-person courses, and Rochester is "committed to making" them equivalent. And as Plaintiff alleges, Rochester's online courses were in fact not equivalent to in-person courses. AC at ¶¶ 12-13, 44-49.

Rochester also points out that the Credit Hour Policy permits online instruction. Mem. at 12-13. But this does not address Plaintiff's claims: he chose and paid for the pricier in-person classes, declining the cheaper online classes. AC at ¶¶ 13, 14, 23, 4-43, 53. That online classes were offered simply misses the point. *Rosado*, 2020 WL 6438684 (denying motion to dismiss similar COVID college tuition suit; "This is kind of like purchasing a Cadillac at full price and

receiving an Oldsmobile. Although both are fine vehicles, surely it is no consolation to the Cadillac buyer that the 'Olds' can also go from Point A to Point B."); *Rhodes*, 2021 WL 140708 at *6 (same, analogizing student's claims to a theatergoer who paid to see Hamilton on Broadway but was only provided with a recording of Hamilton on Disney+).

### 3. *Rochester's Dispute of Its Faculty Handbook and Personnel Policy*

Further supporting Plaintiff's understanding that on-campus courses would be provided as promised, Rochester's Faculty Handbook requires pre-approval before faculty may leave campus for more than a week, AC at ¶ 46, and its Personnel Policy declares that, even to prevent a contagion, telecommuting was no substitute for physical presence. *Id.* at ¶ 26.

Rochester points out that these requirements "were directed to University employees only, not to students." Mem. at 15. But these faculty requirements are part of the overall context that, together with Rochester's other promises and conduct, support an at least implied promise to provide in-person courses. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 14 (1st Cir. 2011) (reversing dismissal of contract claim; "the district court erred when it failed to evaluate the cumulative effect of the factual allegations"); Restatement (Second) of Contracts § 4 (1981) ("A promise . . . may be inferred wholly or partly from conduct.").

Other COVID-19 college tuition cases have overwhelmingly so held. *See, e.g., Salerno*, 2020 WL 5583522, at *5 (denying motion to dismiss; college publications "clearly implied that courses would be conducted in-person"); *Saroya*, 2020 WL 7013598 at *6 ("while the Financial Agreement may lack a promise of in-person instruction, Plaintiff has sufficiently alleged that

UOP's publications when considered together established a contractual agreement"); *Rosado*, 2020 WL 6438684 at \*3 ("the backdrop of numerous other documents referring to in-person classes and amenities are sufficient to establish, at minimum, an implied contract.") (cleaned up); *Gibson I*, 2020 WL 7024463, at \*3 (denying motion to dismiss based on " publications and policies that suggest courses would be conducted in-person and students would have access to campus facilities and activities"); *Patel*, 2021 WL 1049980, at \*8 (denying motion to dismiss, summarizing cases); *Waitt*, 2020 WL 5894543; *Cross*, 2020 WL 4726814; *Smith*, 2020 WL 5694224; *McDermott*, 2020 Ohio Misc. LEXIS 127 at \*6-7.

Moreover, the students are the intended beneficiaries of these faculty agreements. As Rochester's Faculty Handbook explains, its leave policies are required because "[t]he absence of individual faculty members from campus interferes with the educational program of students." 2020 University of Rochester Faculty Handbook at 44.

"Under New York law, a third party may enforce a contract when 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... the circumstances indicate that the promisee intends to give the beneficiary the benefit...'" *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 52 (2d Cir. 2012) (reversing dismissal of breach of contract claim brought by third-party beneficiary despite contract explicitly stating that the agreement was not intended to create any right to any third party), quoting Restatement (Second) of Contracts § 302 (1981). *See also Spear, Leeds & Kellogg v. Central Life Assur. Co.*, 85 F.2d 21, 27 (2d Cir. 1996) ("the insurance companies are entitled, as third party beneficiaries of an arbitration agreement, to insist on arbitration"); *Newman & Schwartz v.*

13

*Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (reversing dismissal of contract and

unjust enrichment claims); Restatement (Second) of Contracts § 302, cmt. d ("if the beneficiary

would be reasonable in relying on the promise as manifesting an intention to confer a right on him,

he is an intended beneficiary").

### D.     Rochester Promised Access to On-Campus Resources and Facilities

Throughout its marketing materials, handbooks, and other materials, Rochester heavily

touts its on-campus in-person program. *See supra* at Facts, II. It promised access to specific on-

campus services and facilities. *Id*. (providing examples of promises to "face-to-face" tutoring,

continuous access to Gleason Library, etc.). And in return for students' payment of fees, Rochester

promised a number of specific on-campus resources, facilities, events, and services. *Id.* (providing

examples). For example, Rochester charged Plaintiff lab fees, but provided fewer than half of the

laboratory classes provided. AC at ¶ 41.[17]  *Compare* Mem. at 14-15, 16 (denying these allegations

were made).

Rochester first urges this Court to ignore its website, incorrectly claiming that New York

"limits the terms of the implied contract . . . to 'a school's bulletins, circulars, and handbooks.'"

Mem. at 14. Yet Rochester admits that handbooks state a contract, *id.*, and its own handbooks

make these promises. *See supra* (quoting handbooks). Moreover, under New York law, a school's

website, catalogs, and other publications also state the terms of the student-school contract. *Jeffers*

*v. Am. Univ. of Antigua*, 93 N.Y.S.3d 36, 37 (2019) (fact book); *Novio v. New York Acad. of Art*,

---

[17]    As Rochester is aware, Plaintiff was enrolled in the Fall 2020 Chemical Instrumentation
course. If necessary, Plaintiff requests leave to amend to include this detail in his pleading.

317 F. Supp. 3d 803, 814 (S.D.N.Y. 2018) (website); *Deen*, 2007 WL 1032295, at *2 ("catalogue and other publications").

Rochester then attempts to characterize these statements as "[m]ere references to campus life at Rochester." Mem. at 15.[18] Plaintiff disagrees. To take just two examples, its requirement that students live on campus is not a "mere reference to campus life." And a full paragraph trumpeting its libraries' furnishings and promising Gleason Library access "24 hours a day, seven days a week during the semester" is more than a "mere reference." *See, e.g., Deen*, 2007 WL 1032295, at *2 (denying summary judgment against drama student in claim that school breached its contract by changing its name, given catalog "unambiguously suggests that the Actors Studio name is a valuable asset."); *Ansari v. New York Univ.*, No. 96 CIV. 5280 (MBM), 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997) (denying motion to dismiss suit alleging school breached its promise of state-of-the-art facilities).

Under New York law, a promise of campus access is enforceable as stated. *See Ford*, 2020 WL 7389155, at *7 (denying school judgment in similar COVID college tuition suit because "Plaintiffs have alleged that they paid the full activity fees, yet after March they did not have access to facilities, activities, services, or other opportunities.") (cleaned up); *Bergeron*, 2020 WL 7486682, at *8 (denying dismissal of similar COVID college tuition suit, based on "statements on RIT's website as the Student Activity Fee supports programs, events, and services that enhance the

---

[18]    In a footnote, Rochester observes that as of January 2021, after the amended complaint was filed, Rochester's website included COVID-19 safety updates. Mem. at 14 n.8. Rochester does not claim what, if anything, in these websites is material to Plaintiff's claim. Nor does Rochester explain how its January 2021 website affects its 2020 breach of contract.

quality of student life at RIT or that the Student Health Services Fee covers office visits") (cleaned up); *Ansari*, 1997 WL 257473, at *3 (denying dismissal of contract claim that school "promised state-of-the-art facilities" and "program activities").

Nonetheless, Rochester contends that a student must claim "unfettered, irrevocable" access to campus facilities. Mem. at 16. No authority supports this dubious rule requiring "magic words." Rochester cites *Cheves*, where an alumnus banned from campus did not even claim that the school promised campus access. *Cheves v. Trustees of Columbia Univ.*, 931 N.Y.S.2d 877 (2011). The court's one-page order briefly affirmed the dismissal of his claims, concluding that facility access to banned alumni was not guaranteed by "the Alumni Relations brochure list[ing] certain benefits and services generally available to alumni." *Id.* at 877. Here, unlike *Cheves*, Plaintiff's campus access claim relies not on location-indifferent promises of "benefits and services," but on location-specific promises of campus access.

As District Judge Hurd summarized a similar COVID college case, the school "released a publication expounding the virtues of its in-person programming that it ultimately did not provide. Drawing all reasonable assumptions in plaintiffs' favor, those allegations are sufficient." *Ford*, 2020 WL 7389155, at *5. *See also Bradley*, 2020 WL 7634159 at *2 (denying motion to dismiss claims based on school's materials which "tout its many resources and facilities — all of which were located on Bradley's campus and thereby imply in-person participation.") (collecting cases); *Bergeron*, 2020 WL 7486682 at *8 (same, for school's website); *Rhodes*, 2021 WL 140708 at *5 (same, for school's "publications and related materials that imply a contract for on-campus instruction and services"); *Moran*, 2021 WL 965754, at *5 (same, for "website and marketing

16

materials touting its on-campus experience."); *Salerno*, 2020 WL 5583522 at *5 (same, for college publications that "touted its many resources and facilities — all of which were located on the campus thereby implying in- person participation."); *Hiatt*, 2021 WL 66298 at *4 (same, for school's website, marketing materials, and acceptance letter promoting its in-person educational services).

### E.    Rochester is Liable for Its Breach

As Plaintiff alleged, Rochester failed to provide the promised in-person classes for the specified length of time, and failed to provide the promised on-campus resources and access. AC at ¶¶ 32-45. Rochester canceled all in-person classes after March 11, 2020, providing some only online, and others not at all. *Id.* at ¶¶ 13, 34. Rochester shut down its campus and denied students access to the facilities and resources it promised. *Id.* at ¶¶ 32, 35, 42.

Undeterred, Rochester argues that it did not act in bad faith in transitioning classes online due to the pandemic, and concludes that it therefore cannot be found to be in breach. Mem. at 16. Its arguments reflect both errors of law and a misreading of Plaintiff's claims.

*First,* Rochester ignores how contract law addresses pandemics, earthquakes, and other similar supervening events. Rochester is free to present evidence that the pandemic rendered its contractual performance impracticable, but even if it succeeds, it still cannot keep full payment for only partial performance. *See Ford*, 2020 WL 7389155, at *7 (denying school judgment in similar COVID college tuition claim; "much as [the school] would make of the fact that it was forced to shut down, that does not answer whether it or its students should bear the cost of that outcome"); Restatement (Second) of Contracts § 377 (1981) (providing restitution if contractual performance

became impracticable due to supervening event); *CAI Rail, Inc. v. Badger Mining Corp.*, No. 20 CIV. 4644 (JPC), 2021 WL 705880, at *8 (S.D.N.Y. Feb. 22, 2021) (holding party was not excused from performing contract to lease rail cars due to COVID-19 pandemic); *407 E. 61st Garage, Inc. v. Savoy Fifth Avenue Corp.*, 23 N.Y.2d 275, 281-82 (1968) ("were the rules otherwise, they would place in jeopardy all commercial contracts."); *Rosado*, 2020 WL 6438684, at *5 (denying motion to dismiss similar COVID college tuition claim; "even assuming for present purposes that impossibility/frustration is established by the pleading, . . . [w]ho bears the risk for the pandemic based upon the contractual expectations of the parties? . . . It would certainly be anomalous, without sufficiently strong evidence of contractual intent, to permit a party to reap the full benefits of an agreement in return for only partial performance.").

***Second,*** Plaintiff's contract claims arise from Rochester's promise to provide on-campus classes and access, not on the implied duty of good faith. Rochester cites no case that cast aside specific promises and enforced only the general implied duty of good faith.

Instead, Rochester cites cases where the only alleged breach was of the implied duty of good faith. *Olsson* addressed a student's claim that he should have received a better grade under the good faith rubric because, as the trial court "stressed[,] there existed no written regulations governing grading criteria at the time that [the student] took the examination." *Olsson v. Bd. of Higher Ed.*, 49 N.Y.2d 408, 412 (1980). Similarly in *Gertler,* "[t]he university has never expressly, by contract or otherwise, obligated itself to provide the amenities plaintiff claims," and thus the professor's claim to office space was reviewable only under an article 78 administrative proceeding to determine the school's good faith. *Gertler v. Goodgold*, 107 A.D.2d 481, 486, 487

N.Y.S.2d 565, *aff'd*, 66 N.Y.2d 946, 489 N.E.2d 748 (1985) (dismissing claim as time-barred

under four-month statute of limitations for article 78 proceedings).[19]

Rochester again misconstrues *Hassan.* Mem. at 17-18. Because the school in *Hassan* did

not promise in-person classes (*see* Argument, I.C, *supra*)*,* the students' failure to allege bad faith

doomed the students' only remaining contract claim – an implied contract to "act in good faith."

2021 WL 293255, at *7, 13 (permitting leave to seek to amend). Importantly, *Hassan* recognized

that courts do ***not*** apply a deferential standard when a specific promise is alleged. *Id.* at *8 n.4. *See*

*Ford*, 2020 WL 7389155, at *6 (denying to dismiss similar COVID college tuition claim; "New

York's deference to educational institutions cannot reach so far as to deny students any recourse

for breaches of express promises."); *Patel*, 2021 WL 1049980, at *6.

Rochester incorrectly asserts that *Paynter* held that a school does not breach a specific

promise by responding to an emergency. Mem. at 18. Not so. *Paynter's* two-paragraph order did

---

[19]  In *Clarke*, the school promised supervision conferences in its handbook, but the court addressed the claims based on the implied contract to act in good faith because, at the time (almost twenty-five years ago), "[t]he New York Court of Appeals has not clearly held that a student can state a valid cause of action in contract on the basis of terms contained in school publications." *Clarke v. Trustees of Columbia Univ. of City of New York*, 1996 WL 609271, at *6 (S.D.N.Y. Oct. 23, 1996) (granting school summary judgment upon uncontroverted evidence that it did not act in bad faith).

Since *Clarke*, courts applying New York law clarified that a breach of contract claim can proceed based on terms contained in school handbooks and other publications. *Deen*, 2007 WL 1032295, at *2 ("catalogue and other publications"); *Ford*, 2020 WL 7389155, at *3 ("bulletins, circulars, and handbooks"); *Novio*, 317 F. Supp. 3d at 814 (website).

Rochester's other citations are to cases addressing bad faith discrimination, not breach of contract. *Pell v. Trustees of Columbia Univ. in City of New York*, 1998 WL 19989, at *20 (S.D.N.Y. Jan. 21, 1998) (denying motion to dismiss student's gender discrimination, sexual harassment, and retaliation claims); *Tiu-Malabanan v. Univ. of Rochester*, 2008 WL 788637, at *5 (W.D.N.Y. Mar. 21, 2008) (dismissing student's racial discrimination claims and electing to not exercise supplemental jurisdiction over implied contract claim).

not hold the school was not in breach. *Paynter v. New York Univ.*, 319 N.Y.S.2d 893 (App. Term 1971). Instead, the court held that canceling a few classes due to anti-war demonstrations was a *de minimis* breach; "[t]he **insubstantial** change made in the schedule of classes does not permit a recovery of tuition." *Id.* (emphasis added). Here, however, Rochester provided, at most, only *half* the promised courses. AC at ¶¶ 6, 13, 34, 40. That is not an insubstantial change. *See also Ford*, 2020 WL 7389155, at *5 ("there is a world of difference between canceling some classes . . . and not affording students services and benefits for an extended period of time despite such a promise. Accordingly, *Paynter* does not control the outcome of this case.").

    ***Finally,*** Rochester's claim for a "bad faith" rule for suits against schools cannot be squared with New York law, which holds schools to its specific promises even without a showing of bad faith. *See Jeffers v. Am. Univ. of Antigua*, 93 N.Y.S.3d 36, 37 (2019) (claim that students were not eligible to take license exam, as promised, due to school's loss of accreditation); *Clogher v. New York Med. Coll.*, 976 N.Y.S.2d 198, 199 (2013) (claim that school "failed to comply with its obligation to maintain the plaintiff's academic records [and] provide her with a personally tailored program"); *Eidlisz v. New York Univ.*, 876 N.Y.S.2d 400, 401 (2009) (claim that school promised to charge tuition per credit but failed to bill plaintiff as promised); *Village Community School v. Adler*, 478 N.Y.S.2d 546, 548 (Civ. Ct. 1984) (claim that school failed to detect learning deficiencies, in breach of its promise to do so); *Tedeschi v. Wagner Coll.*, 49 N.Y.2d 652, 660 (1980) (claim that school failed to follow guidelines; "when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion[,] that procedure must be substantially observed."); *Novio v. New York Acad. of Art*, 317 F. Supp. 3d 803,

814 (S.D.N.Y. 2018) (claim that school breached its promise to designate a Title IX coordinator, provide career services, and promptly respond to sexual harassment claims); *Deen*, 2007 WL 1032295, at *2 (claim that school breached its contract by removing "The Actors Studio" from its name after its relationship with the studio ended); *Ansari,* 1997 WL 257473, at *3 (citing cases).

## II.    Unjust Enrichment

Even if there was no contract for on-campus classes and access, Plaintiff nonetheless paid tuition and fees reasonably expecting them.[20] AC at ¶ 73. His belief was a foreseeable consequence of Rochester's words and conduct. Plaintiff alleges, and a jury well may agree, that good conscience requires a return of money for services not rendered. *Id.* at ¶¶ 10-12, 74-79.

Rochester disputes the equities, insisting that it responded appropriately to the pandemic. Mem. at 19. Here, Rochester confuses its decision to move classes online (arguably appropriate), with Rochester's decision to retain Plaintiff's prepaid tuition and fees (allegedly unjust). As the court held in *Ford*, denying to dismiss unjust enrichment claims in a similar COVID college tuition suit, the school "misses the mark by viewing plaintiffs' complaint as an attack on its decision to shut down." 2020 WL 7389155, at *9. *See also Rosado*, 2020 WL 6438684, at *4 ("[t]he question is not whether [the university] was justified in closing its campus due to an unforeseen pandemic. Rather, the question is where that risk (i.e., the financial burden) should be contractually allocated.") Rochester is free to present its evidence to the jury, but it may not do so

---

[20]    In a footnote, Rochester claims that it refunded "certain" fees, but cites nothing in the record. Mem. at 20 n.11. Its counsel's vague statement in a memorandum cannot control over Plaintiff's allegations otherwise. *See, e.g.,* AC at ¶¶ 9, 40-41 (alleging Plaintiff paid fees for services not provided). *See also Ford*, 2020 WL 7389155, at *8 (rejecting similar argument in COVID college tuition claim).

on a motion to dismiss. *See Rosado*, 2020 WL 6438684, at *5 (although the school "disputes that the retention of payments was 'unjust,' a motion to dismiss tests the sufficiency of the pleading, not the merits of the case."); *In re Boston Univ.*, 2021 WL 66443, at *3; *Cross*, 2020 WL 4726814, at *3; *Salerno*, 2020 WL 5583522, at *5; *Bahrani*, 2020 WL 7774292 at *3; *Gibson I*, 2020 WL 7024463, at *6; *Chong II*, 2020 WL 7338499, at *3.

New York does not require a plaintiff to allege an independent tort or fraud to claim unjust enrichment. *See, e.g., Bergeron*, 2020 WL 7486682, at *9 (denying dismissal of unjust enrichment claims in similar COVID college tuition suit); *Ford,* 2020 WL 7389155, at *9 (same). Rochester again misconstrues *Hassan,* where the students lacked a reasonable expectation of in-person classes and services. Mem. at 19.

## III.    Semesters Following Spring 2020 Semester

Regarding post-Spring 2020 semesters, Rochester argues that it "repeatedly inform[ed] the community that it would offer instruction by online and multimodal means." Mem. at 20.

Rochester relies on a June 19, 2020 letter from the Provost promising that "[t]his fall, we will offer a mix of online and in-person instruction." Mem. Ex. B at 5 (ECF pagination). The letter does not disclaim promises of in-person instruction. It instead confirms that students should consult the course catalog.

### A.    Each Semester, Rochester Promised In-Person Classes

On August 4, 2020, months after the Provost's letter, Rochester defined the terms of the Fall 2020 contract, identifying courses that would be taught "IN PERSON." Mem. Ex. C. For the Summer 2020 semester (before the Provost's letter), Rochester's course catalog similarly defined the terms of the Summer 2020 contract, identifying courses to be taught on campus. *See* also

Course Catalog, Summer 2020 entry for AH 124 (promising on-campus course). And as Plaintiff alleged, Rochester has breached these promises. *See* Argument, I.C, E, *supra*.

Rochester does not respond to Plaintiffs' allegations. Instead, it cites *Hassan*, *Lindner*, and *Gociman* to claim that "such references do not constitute a "specific promise" to promise only in-person courses. Mem. at 22. Yet in *Hassan*, "there [was] no express statements promising that the [location] aspects of a course were not subject to change." *Hassan*, 2021 WL 293255, at *6 (dismissing with leave to amend). Here, in comparison, Rochester required notice to students and an approval process before course formats could be changed. *See supra* at pp. 3-4. And in *Lindner,* the student "failed to identify any specific language in the 2019-2020 Catalog," but instead relied on a class attendance policy. *Lindner v. Occidental Coll.*, 2020 WL 7350212, at *8 (C.D. Cal. Dec. 11, 2020). Here, Plaintiffs identify specific language in the catalog. *See supra* at pp. 3, 9-10. Finally, in *Gociman*, the catalog explicitly stated that it was "not a contract." *Gociman v. Loyola Univ. of Chicago*, 2021 WL 243573, at *4 (N.D. Ill. Jan. 25, 2021). Rochester makes no such disclaimer here.

Rochester then repeats its gripe that Plaintiff did not allege "unfettered, irrevocable" access to on-campus resources. Mem. at 22. Rochester misstates New York law, *see* Argument, I.D.

### B.    Plaintiff Enrolled in In-Person Classes

Rochester contends that Plaintiff did not allege that he registered for in-person classes. Mem. at 23. Nonsense. *See* AC at ¶¶ 13, 43. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (reversing dismissal; "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is.").

Moreover, Rochester knows Plaintiff's Fall 2020 and Spring 2021 course schedule. It already knows that Plaintiff was enrolled in the Fall 2020 Chemical Instrumentation course in which Rochester breached its promise of two laboratories per week. *See* AC at ¶¶ 40-41.

Nonetheless, should the Court require allegations of Plaintiff's course schedule, Plaintiff requests leave to amend. Plaintiff also requests a judicially efficient procedure by which he may plead subsequent course schedules should the pandemic continue.

    **C.**    **Rochester's Breach and Unjust Enrichment**

Rochester promised certain courses would be provided in-person, and failed to deliver what it promised. *See* AC at ¶ 39-41 (alleging Fall 2020 Cultural Politics of Prison Towns Fall 2020 Chemical Instrumentation course were not delivered as promised). It thus did not "deliver[] exactly what it promised," as Rochester claims. Mem. at 23, 24.

Rochester's insistence that it did not act in bad faith is legally insufficient to avoid a breach of contract claim. *See* Argument, I.E, *supra*. And its insistence that it did not commit any independent torts is legally insufficient to avoid an unjust enrichment claim. *See* Argument, II, *supra*.

    **D.**    **Rochester Provides Insufficient Justification to Dismiss Post-Spring 2020 Semesters**

Claims for the Summer 2020, Fall 2020, Spring 2021, and subsequent terms are all based on the same promises as alleged for the Spring 2020 term. *See supra* at Facts, I. Nonetheless, Rochester gripes that Plaintiff does not allege matters specific to the Summer 2020 and Spring 2021 semesters. Mem. at 24-25. Rochester concludes that all claims for *any* semester following Spring 2020 semester must be dismissed. *Id.*

Rochester's argument defies logic. Plaintiff alleges specific facts as to the Fall 2020 semester. *See, e.g.,* AC at ¶¶ 36-42. Why does the absence of Spring 2021 semester allegations doom his Fall 2020 semester claims? Rochester provides no reasoning.

Moreover, no one knows how long the pandemic will continue. Plaintiff's original Complaint was filed when the Fall 2020 semester was just starting, and his Amended Complaint was filed almost a month before the Spring 2021 semester began.[21] Whether a semester should be included in the class is properly raised at class certification, after the parties determine if any materially different promises were made. The matter is simply not ripe to adjudicate on a motion to dismiss. not on a motion to dismiss. *See Gibson II*, 2021 WL 1109126, at *6 n.1 (denying motion to strike class allegations in similar COVID college tuition suit "as more properly addressed at the class certification stage").

## CONCLUSION

Should the Court be inclined to grant its motion, Plaintiff respectfully requests leave to amend. "When a party requests leave to amend its complaint, permission generally should be freely granted." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). (holding district court abused its discretion in denying leave to amend).

---

[21]     Spring 2021 classes began February 1, 2021. Academic Calendar, *available at* https://tinyurl.com/UR-Ac-Cal (last viewed Mar. 23 2021).

Dated:   March 25, 2021                              Respectfully submitted,

DANIEL CARSTAIRS, on behalf of himself and
all others similarly situated.

By:   */s/ James A. Francis*
         James A. Francis*
John Soumilas*
Edward H. Skipton*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
eskipton@consumerlawfirm.com

Yvette Golan*
THE GOLAN FIRM PLLC
529 14th Street, NW, Suite 914
Washington, D.C. 20045
T: (866) 298-4150
F: (928) 441-8250
ygolan@tgfirm.com

* admitted *pro hac vice*

Seth J. Andrews, Esq.
Law Offices of Kenneth Hiller, PLLC.
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
T: (716) 564-3288
F: (877) 891-1189
sandrews@kennethhiller.com

*Attorneys for Plaintiff*