UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DANIEL CARSTAIRS, on behalf of himself
and all others similarly situated,                                    20-CV-6690-CJS

                                                    Plaintiff,

vs                                                                            DECISION and ORDER

UNIVERSITY OF ROCHESTER,

                                                    Defendant.

_____


INTRODUCTION

        Daniel Carstairs ("Plaintiff"), a student at the defendant University of Rochester
("Defendant" or "the University"), filed this action to recover tuition and fees he claims to
be owed due to changes the University made to its operations in response to the Covid-
19 pandemic.  More specifically, Plaintiff primarily asserts that the University promised
to provide him with live, in-person instruction, but it breached that promise by instead
providing him with less-valuable online classes.  According to the Amended Complaint,
"Plaintiff does not dispute that [the University's] decision to cease in-person instruction
was warranted," but he "asks merely to be refunded the money he spent for educational
services that were not provided."[1]  Now before the Court is the University's Motion to
Dismiss the Amended Complaint for failure to state a claim, ECF No. 15.  For the
reasons discussed below the application is denied.

---

[1] Amended Complaint, ECF No. 12 at ¶ 3. (The reader is advised that the ECF page numbers may not
correspond to the page numbering appearing in the filed document)

BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Amended Complaint. At all relevant times Plaintiff was enrolled at the University's College of Arts, Science, and Engineering, and had also taken courses at the University's Eastman School of Music. For the Spring 2020 Semester, Plaintiff paid more than $27,000.00 for tuition, expecting to receive in-person classroom instruction and to have access to the University's facilities. However, on March 11, 2020, approximately seven weeks into the fifteen-week semester, the University announced that it was canceling in-person classes due to the Covid-19 pandemic, and switching instead to online classes.[2] The University similarly canceled access to services, facilities, and equipment, that had previously been available to students. Despite those changes, the University did not refund any tuition or fees to Plaintiff.

Plaintiff maintains that the University's failure to refund tuition or fees under those circumstances constitutes a breach of contract, or alternatively, an instance of unjust enrichment, since the University "promised" to provide students with "classroom/direct faculty instruction" (along with access to services and facilities), but instead only provided them with inferior online instruction.[3]

---

[2] Of course, in doing so the University was not alone. *See, Rynasko v. New York Univ.*, 63 F.4th 186, 189 (2d Cir. 2023) ("At the onset of the COVID-19 pandemic, in the face of unprecedented public health challenges and executive orders prohibiting large gatherings, New York University (NYU), like colleges and universities around the country, rapidly and dramatically changed the way it delivered services. These changes included transitioning to remote online courses in place of in-person classes, closing residence halls, and eliminating a host of in-person facilities and services for the latter portion of the Spring 2020 semester.").

[3] Plaintiff also contends that some classes, such as his "chamber ensemble and organ classes," simply "could not be taught in an online format," and were therefore cancelled altogether. *See*, Amended Complaint at ¶ 13 ("For these classes, [the University] ceased providing any instruction."); *see also, id.* (Indicating that for Plaintiff's chemistry classes, the University provided online instruction, but did not provide the laboratory components of those courses).

As proof that the University specifically promised to provide a certain amount of live, in-person classroom instruction, the Amended Complaint asserts, first, that the University defined a "credit hour" as "fifteen hours of 'classroom or direct faculty instruction' plus thirty additional 'hours of out-of-class student work."  The pleading further asserts that the phrase "classroom or direct faculty instruction" did not include online instruction, since prior to the pandemic lockdown the University generally did not offer online instruction.[4]  Additionally, the pleading cites portions of the University's course catalog and course syllabus indicating that particular classes would be taught on campus by a live instructor.[5]

As proof that online instruction was less-valuable than in-person instruction, the pleading maintains that the dearth of online classes available at the University prior to the pandemic reflected the University's philosophy, expressed in certain internal University documents, that online instruction was inferior in quality to in-person instruction, and therefore to be avoided.[6]  Additionally, the pleading alleges that prior to the pandemic the University charged significantly more money for in-person credits than it did for online credits.[7]

The Amended Complaint further maintains that, in addition to promising in-person classroom instruction, the University promised to provide students with a certain

---

[4] *See*, Amended Complaint at ¶ 5 ("Prior to its March 1, 2020 announcement that it would . . . cease in-person instruction, [the University] permitted online education for only some courses in only some schools[.]").

[5] Amended Complaint at ¶ ¶ 24, 39-40.

[6] *See*, Amended Complaint at ¶ ¶ 26 (citing examples of pre-pandemic procedures for when and how online instruction could be utilized at the University); 46 (citing University's 2020 Faculty Handbook statement concerning the importance of professors being physically present to students and colleagues); 47 (citing an academic study purportedly showing that online courses result in poorer academic performance by students).

[7] *See*, Amended Complaint at ¶ 5, 52-53 (Asserting that prior to the pandemic the University charged $1,720 per credit for classes taught by in-person instruction, and $503 per credit for classes taught by online instruction); *see also*, ¶ 5 (Asserting that for online classes, the University "typically charged far less in tuition.").

on-campus educational experience, through access to various services, activities, and facilities.[8]  The pleading contends that the University collected "hundreds of dollars in fees" for such access,[9] but then only provided those services, activities and facilities for seven weeks of the fifteen-week Spring 2020 Semester, before essentially shutting down the campus due to the pandemic.[10]

The Amended Complaint makes similar allegations concerning the Fall 2020 semester.  Namely, that the University promised to provide in-person instruction and access to facilities, such as existed before the pandemic, but then reneged on those promises in late Summer 2020, leaving students with insufficient time to make other arrangements.  As proof of such a promise, the pleading refers to an announcement by the University in June 2020 that in-person classes would resume in the Fall, and to the University's course catalog which had indicated that particular classes would be taught on campus and "in person."

Overall, the Amended Complaint alleges that based on the University's representations, Plaintiff had a reasonable expectation that in exchange for his payment of tuition and fees the University would provide him with the aforementioned educational experience, including in-person instruction and access to labs, services, activities and facilities, but that the University failed to perform its part of the bargain.

Based on these factual allegations the Amended Complaint purports to assert two causes of action under New York State law: Breach of Contract and Unjust Enrichment.  In that regard, Plaintiff expressly acknowledges that it may have been

---

[8] Amended Complaint at ¶¶ 27-29.
[9] Amended Complaint at ¶ 9.
[10] Amended Complaint at ¶ 9 (Asserting that although the University "provided these services and facility/equipment access for only seven weeks, and could not provide them for the full fifteen weeks, [the University] demanded that students pay fees for the entire fifteen-week semester.").

necessary for the University to take the steps that it took to address the pandemic. Plaintiff maintains, nevertheless, that he suffered pecuniary injury as a result, for which he should be compensated.[11]   More specifically, the Amended Complaint demands "a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of online classes and [restricted access to services and facilities]."[12]

On February 5, 2021, the University filed the subject Motion to Dismiss the Amended Complaint (ECF No. 15).  The University contends, first, that with regard to the Spring 2020 semester, the Amended Complaint fails to plausibly allege the existence of an implied contract, since it does not identify a specific promise by the University to provide an entirely in-person education.[13]   Indeed, the University asserts that none of the documents cited by the Amended Complaint --the Credit Hour Policy, the Course Catalog/Syllabus, the University Website, the Faculty Memo, and the University Personnel Policy-- contain a specific promise by the University to provide either exclusively-in-person instruction or unlimited access to the University's facilities.

Further, the University maintains that the pleading fails to plausibly allege a breach of any such implied contract, since to establish such a breach by a university, a plaintiff must demonstrate  that the university acted arbitrarily or in bad faith, and here

---

[11] *See*, Amended Complaint at ¶ 3 ("Plaintiff does not dispute that [the University's] decision to cease in-person instruction was warranted.  Plaintiff asks merely to be refunded the money he spent for educational services that were not provided."); *see also, id*. at ¶ 11 ("[The University] is not entitled, by either contract or equitable principles, to pass the entire cost of its Covid-19 related closure to its students and their families.  Plaintiff and the putative class are entitled to a partial refund[.]").

[12] Amended Complaint at ¶ 16.  The Amended Complaint primarily complains about the University's actions during the Spring 2020 semester, but also makes similar allegations concerning the Fall 2020 semester.

[13] *See*, ECF No. 15-5 at p. 15 ("Plaintiff's claim for breach of contract fails to plausibly plead any specific, unconditional, enforceable promise by [the University] to provide in-person instruction or access to on-campus resources or facilities to support an implied contract.").

Plaintiff admits that the University acted reasonably when it switched to online learning in response to the Covid-19 pandemic.[14]  For that same reason, the University contends that the pleading fails to plausibly allege an unjust enrichment claim, since such a claim "requires a showing of some form of tortious conduct to justify an equitable remedy."[15]

Regarding the Fall 2020 semester, the University similarly contends that there was neither an implied contract (for exclusively in-person instruction or unfettered access to facilities) nor an unjust enrichment, since the University provided advance notice to students that there could be ongoing changes to campus life and methods of instruction as required by the Covid-19 pandemic.  Alternatively, the University indicates, again, that even assuming such an implied contract existed concerning the Fall 2020 semester, there was no breach (and also no unjust enrichment) since the University acted reasonably in responding to the Covid-19 pandemic.

The University also maintains that certain factual allegations in the Amended Complaint are incorrect, and that the Court can, consistent with Rule 12(b)(6), consider integral documents outside the pleading which point up such errors.  For instance, the University asserts that it is a documented fact that the University actually did *not* charge less for credit-bearing online courses than for courses taught in-person.[16]  Similarly, the University indicates that its Credit-Hour Policy expressly stated that "each of the University's online course offerings is 'equivalent to its face-to-face counterpart' and

---

[14] *See*, ECF No. 15-5 at p. 15 ("[T]he Amended Complaint does not plausibly plead that the University breached any promise by acting arbitrarily or in bad faith in transitioning to online learning.").
[15] ECF No. 15-5 at p. 6.
[16] *See*, ECF No. 15-5 at p. 8 ("Although no such cost differential exists for Rochester credit-bearing offerings, the Eastman Community Music School—which does not provide credit—lists an online course for *high-school students* at a discounted fee of $503, the exact amount that Plaintiff claims.  *See* https://www.esm.rochester.edu/community/ap-music-theory/[.]") (emphasis in original).

meets the applicable state and federal credit-hour standards[.]"[17]  The University also asserts that an examination of its website would show that it never made any specific promises concerning in-person instruction, contrary to what the Amended Complaint suggests, and that the alleged misstatements by the University concerning the Fall 2020 semester, referenced in the pleading, "are contradicted by the plain language of the statements themselves."[18] Additionally, the University contends that the Court may consider the University's Financial Responsibility Agreement as evidence of the lack of any specific promise, since it is integral to the dispute, even though Plaintiff intentionally failed to reference it in his Amended Complaint.  On the other hand, the University maintains that the Court should not consider the faculty memo or personnel policy cited by the Amended Complaint, since those documents were not made public and therefore could not have conveyed any promise to Plaintiff.

Plaintiff opposes the application by essentially reiterating the assertions in the Amended Complaint.  Namely, that an implied contract for on-campus, in-person classes, with access to facilities, was created based on promises contained in the University's course catalog,[19] credit hour policy, undergraduate handbook, faculty handbook, personnel policy, marketing materials, and website,[20] and that the University failed to provide what it promised.  Plaintiff further contends that "the overwhelming

---

[17] ECF No. 15-5 at p. 10.
[18] ECF No. 15-5 at p. 12.  Defendant points out, for example, that the University's statements about the Fall 2020 semester expressly indicated that after the Thanksgiving break all classes would all be taught online.
[19] Plaintiff notes, for example, that the course catalog indicated that certain courses were to be taught "in person" in a specific lecture hall on campus.
[20] See, e.g., ECF No. 19 at p. 22 ("[U]nder New York law, [in addition to bulletins, circulars and handbooks,] a school's website, catalogs, and other publications also state the terms of the student-school contract.")

majority of cases addressing similar Covid college tuition suits have held such allegations are cognizable and should [survive a motion to dismiss]."[21]

Plaintiff further maintains that he has plausibly alleged a breach of contract, notwithstanding his concession that the University acted reasonably in shutting down the campus in response to the Covid-19 pandemic, since, "[e]ven in a pandemic, one party may not keep full contract benefits for only partial performance."[22]  That is, Plaintiff asserts that it was not wrong for the University to switch to online classes, but it was wrong for the University to keep the money that it was paid to provide in-person classes. Plaintiff also maintains that New York law does not require a showing of bad faith to establish a breach of an implied contract.[23]

The University filed a reply in which it reasserts its original arguments and suggests that Plaintiff's opposition improperly attempts to raise new theories which the Court should ignore.[24]

The parties have also made numerous post-reply submissions of supplemental authority.

The Court has carefully considered the parties' submissions.

DISCUSSION

Standards Applicable to Motions Under Rule 12(b)(6)

The University has moved to dismiss the Complaint pursuant to Fed.R.Civ.P.

---

[21] ECF No. 19 at p. 9, fn 1 (collecting cases from courts around the United States.  Although, as noted earlier the instant action is based specifically on New York law).

[22] ECF No. 19 at p. 9.

[23] ECF No. 19 at pp. 26-27; *see also, id*. at p. 28 ("[The University's] claim for a 'bad faith' rule for suits against schools cannot be squared with New York law, which holds schools to [their] specific promises even without a showing of bad faith.") (citing cases).

[24] ECF No. 24 at p. 5 ("All but conceding the insufficiency of his pleading, Plaintiff responds to the Motion with a slew of new allegations not pled in his Amended Complaint."); *see also, id*. at p. 9 ("Plaintiff's opposition contains no fewer than 16 quotations from various handbooks and polices . . . that are not recited, identified, or even alluded to in the Amended Complaint.").

12(b)(6) and the standards for such an application are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted); *see also*, id. at 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citations and internal quotation marks omitted.)

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal* ); *see also, In re Myovant Scis. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 373 (S.D.N.Y. 2021) ("The plaintiffs claim that discovery of the relevant disclosure schedule

may establish the portion of the purchase price allocated to Movant shares. . . . But "it is only by taking care to require allegations that reach the level suggesting [a plausible claim] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence." *Twombly*, 550 U.S. at 559, 127 S.Ct. 1955. Because their unsupported speculation does not amount to a reasonable foundation, the plaintiffs cannot avoid dismissal by claiming that discovery will reveal a basis for their claim.").

Claim for Breach of Implied Contract Between University and Student

Plaintiff here claims that the University breached an implied contract to provide in-person instruction and access to services, as discussed above. The University, though, maintains that the Amended Complaint fails to plausibly plead such an actionable claim, for two reasons: First, the pleading does not identify sufficiently specific promises by the University to provide either completely in-person instruction or unfettered access to facilities and services; and second, the pleading does not allege that the University acted arbitrarily or in bad faith.

In *Rynasko v. New York University*, 63 F.4th 186 (2d Cir. Mar. 23, 2023) ("*Rynasko*"), a panel of the United States Court of Appeals for the Second Circuit recently clarified the applicable law in this area relative to motions to dismiss. *Rynasko* involved a situation similar to the instant case, where a student brought a purported class action against a university asserting claims for breach of implied contract and unjust enrichment, based on actions taken by the university to address the Covid-19 pandemic. The plaintiff in *Rynasko* sought a prorated refund of tuition and fees for the Spring 2020 semester, based upon the same argument raised by Plaintiff here:

> [The plaintiff] did not suggest that NYU should not have taken the steps it took in response to the pandemic, but argued that NYU had not delivered the educational services, facilities, access, and opportunities for which [she] paid, and she was thus entitled to a pro-rated refund of tuition and fees.

*Rynasko*, 64 F.4th at 189.  The plaintiff in Rynasko alleged that the implied contract was based upon representations in the university's course catalog and marketing materials, which highlighted the in-person instruction and "campus experience" offered by the university.

The Circuit Court found, contrary to the ruling by the district court, that the claims for breach of contract and unjust enrichment under New York law were plausible, even though the defendant university had provided a written disclaimer to potential students, expressly reserving the right to change or cancel its academic offerings:

> At issue here is whether a reasonable factfinder could conclude, based on the plausible allegations in the Proposed Complaint, that NYU had an implied contract with [the student plaintiff] that included a general obligation to provide in-person courses, activities, services, and facilities. *Viewed from the perspective of a pre-COVID world, given NYU's extensive representations about the nature of student life at NYU, as well as historical experience, we conclude that a reasonable factfinder could find that NYU impliedly agreed to provide students in-person services.* Several other circuits have reached similar conclusions in analogous cases. We acknowledge the disclaimer language in the Tisch Bulletin that reserves to NYU broad discretion with respect to its course and activity offerings, but cannot conclude as a matter of law that this language overrides *all of NYU's other representations* and encompasses the discretion to cancel all in-person courses, services, activities, and facilities. Whatever contractual defenses may be available to NYU based on the unprecedented public health emergency created by the COVID-19 pandemic are beyond the scope of the issues in this appeal.
>
> New York courts have long recognized that the relationship between a university and its students is "contractual in nature," *Prusack v. State*, 117 A.D.2d 729, 498 N.Y.S.2d 455, 456 (2d Dep't 1986), and that "specific

promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract," *Keefe v. N.Y. L. Sch.*, 71 A.D.3d 569, 897 N.Y.S.2d 94, 95 (1st Dep't 2010).13

Under New York law, the existence of an implied contract is a question of fact. *See New Windsor Volunteer Ambulance Corps v. Meyers*, 442 F.3d 101, 112 (2d Cir. 2006) (citing *Shapira v. United Med. Serv., Inc.*, 15 N.Y.2d 200, 210, 257 N.Y.S.2d 150, 205 N.E.2d 293 (1965)). Thus, the question before us is not whether [plaintiff's] plausible allegations necessarily establish an implied contract to provide generally in-person services; the question is whether a reasonable factfinder could conclude that [plaintiff's] plausible allegations demonstrate an implied contract to provide in-person services. *See generally Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021) ("In determining if a claim is sufficiently plausible to withstand dismissal, we accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiffs, and we will not dismiss as long as the pleadings support more than a sheer possibility that a defendant has acted unlawfully.") (internal quotation marks and citations omitted).

In considering the allegations in the Proposed Complaint, our role is to ascertain the intention of the parties at the time they entered into the contract. *See Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458, 775 N.Y.S.2d 757, 807 N.E.2d 869 (2004). In other words, could a reasonable factfinder conclude that before [plaintiff] enrolled in the Spring 2020 semester, the parties mutually intended and *implicitly agreed* that NYU would provide generally in-person courses, activities, facilities, and services?

From that perspective, we conclude that the Proposed Complaint plausibly alleges an implied contract between NYU and its students to deliver an in-person student experience. As set forth more expansively above, *the Proposed Complaint identifies NYU's course catalog, which designated [plaintiff's] selected courses as "in-person;" NYU's marketing materials, which described the numerous benefits of attending college in New York City; NYU's descriptions of its on-campus services and facilities and the benefits of personal contacts with faculty and fellow students; as well as NYU's past course of conduct as forming the basis of the implied contract promising in-person services. See Gociman*, 41 F.4th at 885 ("Loyola's

pre-pandemic practice supports a reasonable inference that in-person instruction, along with access to on-campus facilities, is a norm for students enrolled in the traditional on-campus program."); *see also Jemzura v. Jemzura*, 36 N.Y.2d 496, 503-04, 369 N.Y.S.2d 400, 330 N.E.2d 414 (1975) ("A contract implied in fact may result in an inference from the facts and circumstances of the case ... and is derived from the presumed intention of the parties as indicated by their conduct.") (internal citations and quotation marks omitted).

In addition, the Proposed Complaint describes some of the particular ways in which suspension of in-person services dramatically altered the experience for which [plaintiff], as a student majoring in dance, had contracted: they no longer had access to the dance studio, had to buy their own ballet bar for classes, and were left to join classes virtually at odd hours from the West Coast or rely on recorded versions, thereby missing out on direct interaction with faculty. *A factfinder could reasonably determine that NYU, in light of its representations and longstanding history, impliedly agreed that in-person courses, services, activities, and facilities would comprise a substantial part of the NYU educational experience for which students contracted.*

In so concluding, we join several of our sister circuits that have reached similar conclusions in analogous cases. *See Shaffer*, 27 F.4th at 763-65 (relying on language in university bulletin, pricing difference between online and in-person classes, and historic practice of on-campus instruction); *Gociman*, 41 F.4th at 884-85 (relying on course catalog, online registration portal, pre-pandemic practice, and higher tuition for in-person classes); *Jones*, 51 F.4th at 114-16 (relying on course catalog, credit hour policy which promised "contact time" between students and professors, higher tuition for in-person classes, historic practice of in-person instruction, and marketing materials).

This case is not entirely on all fours with *Shaffer*, *Gociman*, and *Jones* in that the plaintiffs in those cases pointed to a pricing differential between the university's online courses and in-person classes to support their claims. But that pricing differential was not dispositive in any of the above cases; it was "additional support." *Shaffer*, 27 F.4th at 764. *While the presence of a price differential between courses offered online versus in-person classes may be highly relevant for showing damages, we cannot conclude that a differential between in-person and online classes is a*

*necessary condition for plausibly alleging an implied contract for in-person courses and services*.

\*\*\*

[Nor are we] convinced that the language of the admittedly broad disclaimer, which provides that NYU may "change without notice at any time" its "course offerings," "including, but not limited to ... the relocation of or modification of the content of any of the foregoing; and the cancellation of scheduled classes or other academic activities," precludes [the plaintiff's] claim as a matter of law for several reasons. App'x 125.

First, the disclaimer must be understood as a single data point in the context of all the other factors shaping the contours of the implied contract between NYU and its students—*including NYU's representations highlighting the in-person nature of its offerings, and its historical practice of providing services in person and on campus. See Shaffer*, 27 F.4th at 765 ("[T]he Universities cite nothing in their historical courses of dealings with their students to suggest that they have retained unfettered rights to shut down on-campus educational activities and use online learning in its place after students have paid tuition for traditional on-campus courses."). Moreover, even in the context of express contracts, New York law disfavors constructions that give one party "an unfair and unreasonable advantage over the other." *Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc.* 84 N.Y.2d 430, 438, 618 N.Y.S.2d 882, 643 N.E.2d 504 (1994) ("Language in contracts placing one party at the mercy of the other is not favored by the courts.") (citations omitted); *see also Albunio v. City of New York*, 23 N.Y.3d 65, 71, 989 N.Y.S.2d 1, 11 N.E.3d 1104 (2014) (noting the "general rule" that "equivocal contracts will be construed against the drafter[ ]") (citation omitted).

\*\*\*

Finally, at issue in this case is not just NYU's modification or cancellation of a substantial number of classes and activities, or even a whole school. Plaintiff[ has] alleged that NYU, *justifiably under the circumstances*, completely transformed the student experience it provided from one revolving around on-campus, in-person classes, contact with faculty, in-person extracurricular activities and services, and access to university facilities to a completely virtual experience that, in [plaintiff's] view, was significantly less valuable. *A reasonable person could conclude that in the context of all the various representations that collectively comprise the implied contract between [plaintiff] and NYU, the reservation language does not extend so far as to reserve to NYU the discretion to undertake*

> *such a wholesale transformation of the NYU student experience*.
>                                              ***
> For the above reasons, viewing the allegations in the light most favorable
> to Plaintiff[ ], we conclude that [Plaintiff] has stated a viable claim for
> breach of implied contract against NYU.

*Rynasko*, 63 F.4th at 197–201 (emphasis added; footnotes omitted).

This Court views the *Rynasko* ruling as taking a very broad view of what a plaintiff may use to establish an implied contract in post-Covid-19 university cases such as this.  Indeed, the Circuit Court found the plaintiff's contract claim plausible, despite an express disclaimer by the defendant university, and even without any allegations concerning a price differential between online courses and in-person courses. Additionally, as evidence of a contract, the Circuit Court, despite acknowledging that New York law requires "specific promises," allowed the plaintiff to rely on factors including "marketing materials," "descriptions of . . . on-campus services and facilities and the benefits of personal contacts with faculty and fellow students," and the university's "past course of conduct" toward other students.  Moreover, the Circuit Panel plaintiff's breach-of-contract claim plausible even though the university had admittedly acted "justifiably under the circumstances."

Consequently, in light of *Rynasko* this Court here finds that the University's arguments concerning the sufficiency of Plaintiff's implied contract claim lack merit, since the Court cannot say, as a matter of law, that a reasonable factfinder could not find, based on the facts alleged in the Amended Complaint, that Plaintiff and the University "mutually intended and implicitly agreed that [the University] would provide generally in-person courses, activities, facilities, and services" for both the Spring 2020

and Fall 2020 semesters.[25]   Accordingly, the University's motion is denied as to the implied contract claim.

<u>Unjust Enrichment</u>

Plaintiff alternatively seeks a partial recovery of tuition and fees under a theory of unjust enrichment, based on the same factual allegations discussed earlier.   The University maintains, however, that such claim fails since the Amended Complaint admits that the University was justified in switching to online classes to limit the spread of Covid-19.   The University asserts that since unjust enrichment is an equitable remedy, there can be no unjust enrichment claim unless the University acted tortiously.

Again, though, the Second Circuit's recent *Rynasko* decision requires the denial of the University's motion on this point.   More specifically, the *Rynasko* decision observed, first, that,

> [t]o recover under a theory of unjust enrichment under New York law, a litigant must show "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275, 192 N.E.3d 1128 (2022) (citation, internal quotation marks, and alterations omitted).

*Rynasko*, 63 F.4th at 201.  Further, the *Rynasko* panel found that the plaintiff had stated an actionable claim for unjust enrichment, even though, as noted earlier, the plaintiff there "did not suggest that NYU should not have taken the steps it took in response to the pandemic."  In that regard, it appears the *Rynasko* panel viewed the alleged unjust conduct as being the university's subsequent decision not to refund any portion of the tuition and fees it had collected, despite having failed to provide in-person instruction

---

[25] The Court makes this determination even assuming the University is correct in asserting both that the University did not charge less for online classes and that the Court should not consider the allegations concerning the faculty memo and personnel policy.

and access to facilities and services. That is, the alleged unjust conduct was not the shutting down of the campus, but the retention of the tuition and fees. *See, id.* ("To recover under a theory of unjust enrichment under New York law, a litigant must show … that it is against equity and good conscience to permit the other party *to retain what is sought to be recovered*.") (emphasis added).

Here, Plaintiff makes the same claim, which is that the University's decision to retain the entire amount of tuition and fees, for the Spring 2020 and Fall 2020 semesters, was inequitable under the circumstances. Consequently, the Court finds that the University's motion to dismiss the unjust enrichment claim lacks merit.

## CONCLUSION

The University's Motion to Dismiss the Amended Complaint (ECF No. 15) is denied. Pursuant to Fed. R. Civ. P. 12(a)(4)(B), the University shall file an answer to the Amended Complaint within fourteen days of the date of this Decision and Order, unless the parties stipulate to a different deadline.

SO ORDERED.

DATED:    May 25, 2023
          Rochester, New York

                              *Charles J. Siragusa*
                              CHARLES J. SIRAGUSA
                              United States District Judge