**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

DANIEL CARSTAIRS, *on behalf of himself
and all others similarly situated*,

       Plaintiff,

   v.

UNIVERSITY OF ROCHESTER,

       Defendant.

Case No. 6:20-cv-06690-CJS

**PLAINTIFF'S MOTION FOR ORDER PRELIMINARILY APPROVING CLASS
ACTION SETTLEMENT AND DIRECTING NOTICE TO SETTLEMENT CLASS**

James A. Francis   Yvette Golan
FRANCIS MAILMAN SOUMILAS, P.C.   THE GOLAN FIRM PLLC
1600 Market Street, Suite 2510   529 14th Street, Suite 914
Philadelphia, PA 19103   Washington, D.C. 20045
T: (215) 735-8600   T: (866) 298-4150
F: (215) 940-8000   F: (928) 441-8250
jfrancis@consumerlawfirm.com   ygolan@tgfirm.com

Attorneys for Named Plaintiff and the Settlement Class
*additional attorneys on signature page*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.    INTRODUCTION ........................................................................................................ 1

II.   HISTORY OF THE LITIGATION ............................................................................. 3

III.  THE TERMS OF THE PROPOSED SETTLEMENT ................................................ 5

    A.    The Proposed Settlement Class .................................................................. 5

    B.    Monetary Relief for Settlement Class Members ........................................ 5

    C.    The Proposed Class Notice ........................................................................ 7

    D.    Dismissal and Release of Claims .............................................................. 7

    E.    Attorneys' Fees and Service Award for Representation of the Settlement Class ... 7

    F.    Proposed Schedule Following Preliminary Approval ............................... 8

IV.   ARGUMENT ............................................................................................................... 9

    A.    The Court Should Certify the Proposed Class for Settlement Purposes ............... 9

        1.    The Rule 23(a) Requirements Are Satisfied ................................. 9

        2.    The Rule 23(b)(3) Requirements Are Satisfied Here .............................. 12

    B.    The Settlement Is Fair, Reasonable, and Adequate ............................... 14

        1.    The Proposed Settlement Is the Result of Arm's Length Negotiations .... 15

        2.    The Settlement Is Within the Range of What Is Reasonable .................. 16

    C.    The Court Should Approve the Proposed Notice to the Settlement Class ........... 18

    D.    The Court Should Appoint Named Plaintiff's Attorneys as Class Counsel ......... 19

V.    CONCLUSION ........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

### Cases

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) ..................................................................16

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................9, 13

*Cavin v. Home Loan Ctr., Inc.*,
236 F.R.D. 387 (N.D. Ill. 2006)..................................................................13

*Choi v. Brown Univ.*,
No. 1:20-cv-00191-JJM-LDA (D.R.I.) ..........................................................2, 3

*City of Detroit v. Grinnell Corp*
495 F.2d 448 (2d Cir. 1974)..........................................................................14

*Comer v. Cisneros*,
37 F.3d 775 (2d Cir. 1994)............................................................................11

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)............................................................................10

*In re Currency Conversion Fee Antitrust Litig.*,
2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)............................................14, 15, 17

*D'Amario v. The Univ. of Tampa*,
No. 7:20-cv-03744-CS (S.D.N.Y.) ...................................................................3

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)............................................................................9

*In re Drexel Burnham Lamber Group, Inc.*,
960 F.2d 285 (2d Cir. 1992)....................................................................10, 12

*Espejo v. Cornell University*,
No. 3:20-cv-00467-MAD-MIL (N.D.N.Y.)....................................................3, 17

*Fittipaldi v. Monmouth University*,
No. 3:20-cv-05526 (D.N.J.) ............................................................................3

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982).......................................................................................11

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................14

*Gross v. Wash. Mutual Bank, F.A.*,
   2006 WL 318814 (E.D.N.Y. Feb. 9, 2006) .................................................................10, 15

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ...............................................................................15

*Jones v. Adm'rs of Tulane Educ. Fund*,
   No. 20-cv-02505 (E.D. La.) .......................................................................................17, 20

*Kelen v. World Fin. Network Nat'l Bank*,
   302 F.R.D. 56 (S.D.N.Y. 2014) .................................................................................10

*Kincheloe v. Univ. of Chicago*,
   No. 1:20-cv-3015 (N.D. Ill.) .......................................................................................2, 17

*Knapp v. Badger Techs., Inc.*,
   2015 WL 3745303 (W.D.N.Y. June 15, 2015) ..........................................................7

*Leonard v. La Salle Univ.*,
   No. 2:24-CV-62 (E.D. Pa.) .........................................................................................17

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169 (S.D.N.Y. 2014) ...............................................................................9

*In re Lloy'd Am. Trust Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................................8

*Lowe v. NBT Bank, N.A.*,
   2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022) ..........................................................16

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) .......................................................................................11, 12

*Martin v. Lindenwood Univ.*,
   No. 4:20-cv-01128-RLW (E.D.Mo.) ..........................................................................3

*Martinez v. Univ. of San Diego*,
   2025 WL 886970 (S.D. Cal. Mar. 21, 2025) .............................................................17, 19

*Metzner v. Quinnipiac University*,
   3:20-cv-00784-KAD (D. Conn.) .................................................................................3

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ....................................................................................................18, 19

*In re Nasdaq Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................................15

*In re Nassau County Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)............................................................................10

*Nieves v. Cmty. Choice Health Plan of Westchester*,
    2012 WL 857891 (S.D.N.Y. Feb. 24, 2012).............................................14, 15

*Pfeifer v. Loyola Univ. of Chicago*,
    No. 1:20-cv-3116 (N.D. Ill.) ............................................................................2

*In re Platinum & Palladium Commodities Litig.*,
    2014 WL 3500655 (S.D.N.Y. July 15, 2014) ....................................................14

*Porter v. Emerson College*,
    No. 1:20-cv-11897-RMZ (D. Mass.) ...........................................................2, 19

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................................17

*Ramey v. The Pennsylvania University*,
    No. 2:20-cv-753 (W.D. Pa.)...............................................................................17

*Rocchio v. Rutgers, The State Univ. of New Jersey*,
    No. MID-L-003039-20 (N.J. Super. Ct.) ......................................................2, 17

*Rosado v. Barry Univ., Inc.*,
    No. 1:20-cv-21813-JEM (S.D. Fla.) ..................................................................8

*Shaffer v. George Washington Univ.*,
    No. 1:20-cv-1145 (D.D.C.) ................................................................................2

*Smith et al. v. The Univ. of Pennsylvania*,
    No. 2:20-cv-02086 (E.D. PA) ............................................................................3

*Smith v. Univ. of Pennsylvania*,
    No. 2:20-cv-2086-TJS (E.D. Pa.).......................................................................2

*Spicer v. Pier Sixty LLC*,
    2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012).....................................................8

*Staubus v. Univ. of Minnesota*
    No. 27-cv-20-8546 (4th Jud. Dist., Hennepin Cnty., Minn.)................................2

*Wal-Mart Stores, Inc., v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005)...............................................................................15

*Wal-Mart Stores v. Dukes*,
    564 U.S. 338 (2011)..........................................................................................10

*Wnorowski v. Univ. of New Haven*,
   No. 3:20-cv-1589 (D. Conn.) ................................................................................2

*Wright v. S. New Hampshire Univ.*,
   No. 1:20-cv-00609-LM (D.N.H.) ...........................................................................8

## Rules

FED. R. CIV. P. 23 ............................................................................... *passim*

NOW COMES Named Plaintiff[1] Daniel Carstairs, by and through his undersigned attorneys, and moves this Honorable Court to enter an Order preliminarily approving the parties' class action settlement and directing notice to members of the Settlement Class.

## I.    INTRODUCTION

The parties are pleased to present for the Court's approval their settlement of this action, which arises out of Defendant University of Rochester's transition to remote learning in response to the COVID-19 pandemic. The settlement creates a $3,500,000.00 fund which will be used to make automatic cash payments to members of the Settlement Class without the need to make a claim, and will also pay for all administrative expenses, attorneys' fees and costs of litigation, and a Service Award for Named Plaintiff Daniel Carstairs ("Named Plaintiff" or "Carstairs").

In this matter, Named Plaintiff alleged that he and other similarly situated students registered for in-person courses at Rochester and paid tuition and various fees in exchange for Rochester's promise to provide the unique benefits of an in-person, on-campus educational experience. Carstairs alleged that Rochester breached an implied contract with him (or was, in the alternative, unjustly enriched) when it transitioned from in-person classes to remote learning in response to the COVID-19 pandemic, beginning in the spring 2020 semester and continuing through the summer 2020 and fall 2020 semesters. Further, he alleges that Rochester's shift to remote education gave rise to claims of breach of implied contract and unjust enrichment.

Carstairs and Rochester have reached an agreement to settle his and Settlement Class Members' claims, as set forth in the Settlement Agreement ("S.A."), which is attached hereto as Exhibit 1. Pursuant to FED. R. CIV. P. 23(e), the Parties request the Court enter the proposed

---

[1]    Capitalized terms are defined in Section II of the parties' Settlement Agreement and Release ("Settlement Agreement" or "S.A."), which is attached hereto as Exhibit 1.

Preliminary Approval Order attached to the Settlement Agreement as Exhibit A that would certify for settlement purposes and direct notice to the Settlement Class.

Rochester supports the instant motion request for preliminary approval of the proposed Settlement and agrees to provisional certification of the proposed Settlement Class for settlement purposes only. Although Rochester denies Carstairs's claims in this matter, all allegations of wrongdoing, fault, liability, or damage of any kind to Carstairs and/or members, all class action allegations; and the factual allegations in this motion, it has nevertheless agreed to resolve this case, taking into account the uncertainty and risks inherent in litigation generally and the certainty of a negotiated settlement, because the proposed Settlement will provide concrete benefits to Settlement Class Members and will avoid further expense, burden, and distraction from Rochester's educational mission.

The proposed settlement is the product of fully informed, arms-length settlement negotiations, which included mediation before Judge Diane M. Welsh (ret.) of JAMS. The settlement satisfies all the prerequisites for preliminary approval and certification of the Settlement Class. Moreover, the proposed settlement is fair, reasonable, and adequate as it recognizes the risks of continued litigation while providing substantial relief to Settlement Class Members in line with similar settlements in similar cases.[2]

---

[2]    *See, e.g., Kincheloe v. Univ. of Chicago*, No. 1:20-cv-3015 (N.D. Ill.) ($4,950,000 settlement for 19,818 students); *Shaffer v. George Washington Univ.*, No. 1:20-cv-1145 (D.D.C.) ($5,500,000.00 settlement for over 19,875 students); *Smith v. Univ. of Pennsylvania*, No. 2:20-cv-2086-TJS (E.D. Pa.) ($2,875.016.51 settlement for 24,500); *Porter v. Emerson College*, No. 1:20-cv-11897-RMZ (D. Mass.) ($2.06 million settlement for 4,262 students); *Pfeifer v. Loyola Univ. of Chicago*, No. 1:20-cv-3116 (N.D. Ill.) ($1,375,000 for 14,496 students); *Choi v. Brown Univ.*, No. 1:20-cv-00191-JJM-LDA (D.R.I.) ($1,500,000 common settlement fund for 9,646 students); *Wnorowski v. Univ. of New Haven*, No. 3:20-cv-1589 (D. Conn.) ($2,285,600 Gross Settlement for 6,144 students); *Staubus v. Univ. of Minnesota*, Court File No. 27-cv-20-8546 (4th Jud. Dist., Hennepin Cnty., Minn.) ($3.25 million for 54,000 students); *Rocchio v. Rutgers, The State Univ. of New Jersey*, No. MID-L-003039-20 (N.J. Super. Ct.) ($5 million settlement with a per student

For these reasons, Named Plaintiff Carstairs respectfully requests that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order.

## II.    HISTORY OF THE LITIGATION

This matter was filed on September 10, 2020 by the Named Plaintiff on behalf of himself and other students who paid (directly or indirectly) tuition and fees to Rochester for in-person services and education not provided when Rochester closed its campus during the COVID-19 pandemic. *See* ECF 1.

Rochester filed a motion to dismiss the Complaint on December 4, 2020. ECF 10. Pursuant to a stipulation, ECF 11, Named Plaintiff filed an Amended Complaint on January 8, 2021. ECF 12. On February 5, 2021, Rochester filed a motion to dismiss the Amended Complaint, which the parties fully briefed. ECFs 15, 19, 24. While the motion was pending, the parties submitted a number of notices of supplemental authority concerning other COVID-19 college campus closure matters in suit across the country. *See* ECFs 26, 27, 29, 30, 31, 32, 33, 38, 41, 43, 45.

On May 25, 2023, the Court denied Rochester's motion to dismiss the Amended Complaint, ECF 46, and Rochester filed its Answers to the Amended Complaint on June 26, 2023. ECF 48.

---

recovery of $77.48); *Smith et al. v. The Univ. of Pennsylvania*, No. 2:20-cv-02086 (E.D. PA) ($4.5 million for more than 24,000 students); *Choi v. Brown University*, Case No. 1:20-cv-00191-JJM-LDA (D.R.I.) (approving $1.5 million for more than 9,600 students); *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128-RLW (E.D. Mo.) ($1.65 million common fund for more than 5,800 students); *D'Amario v. The Univ. of Tampa*, No. 7:20-cv-03744-CS (S.D.N.Y.) ($3.4 million common fund for more than 9,000 students); *Metzner v. Quinnipiac University*, 3:20-cv-00784-KAD (D. Conn.) ($2.5 million common fund for more than 9,000 students); *Fittipaldi v. Monmouth University*, Case No. 3:20-cv-05526- MAS-RLS (D.N.J.) ($1.3 million common fund for 4,200 students); *Espejo v. Cornell University*, Case No. 3:20-cv-00467-MAD-MIL (N.D.N.Y.) ($3 million for more than 24,000 students).

The parties then began conducting written discovery. *See* ECFs 50, 51, 52, 53, 62. Rochester responded to interrogatories and produced thousands of pages of documents in response to Named Plaintiff's discovery, and Class Counsel worked together to analyze these as well as thousands of additional pages of market studies and reports in assessing proof of class-wide damages. Class Counsel also prepared for the deposition and the production of documents from Plaintiff, Daniel Carstairs.

As discovery continued, the parties were referred to mediation, *see* ECF 53, and on March 21, 2024, the parties participated in a day-long mediation with the Hon. Diane Welsh (Ret.) of JAMS, and agreed in principle to settle all claims on a classwide basis.

Since then, the parties continued to meet and confer over discovery necessary to finalize their settlement. Notably, because some students continued to receive in-person education after Rochester's COVID-related transition to remote instruction and some students enrolled in courses that were to be provided online even before the pandemic, this process included multiple, time-consuming queries of Rochester's enrollment and payment data and related productions over several months. These complex datasets required several months to compile and produce despite the parties' best efforts to streamline the scope of data needed. Ultimately, Rochester produced the agreed-upon data on December 23, 2024. Following unexpected health-related delays and unexpected matters requiring the University's attention during the past several months, the parties finalized the Settlement in May, 2025.

The parties now present their settlement for the Court's consideration and approval.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

A.    The Proposed Settlement Class

The Settlement Agreement provides relief for members of the following Settlement Class:

Any student or learner who paid or caused to be paid tuition and/or fees to attend in-person courses University of Rochester in the Spring 2020 Semester, Summer 2020 Semester, and/or Fall 2020 Semester for a degree- or certificate-bearing University of Rochester program and whose courses were not provided in-person. The Settlement Class does not include counsel of record (and their respective law firms) for any of the Parties, employees of Defendants, or employees of the federal judiciary.

S.A. at § 2.3. According to Rochester's records, 9,982 Settlement Class Members are eligible to obtain relief pursuant to the Settlement Agreement if approved.

B.    Monetary Relief for Settlement Class Members

The Settlement Agreement creates a Settlement Fund of three million five hundred thousand dollars ($3,500,000.00) that, less any amount the Court awards in attorneys' fees and costs, a Service Award, and class notice and administration expenses, will be automatically distributed on a proportionate, *pro rata* basis to Settlement Class members without the need for Class members to file a claim. S.A. at §§ 4.2, 4.2.1, 5.1, 5.3, 5.3.1.

Cash awards will be determined according to a uniform calculation that accounts for the amount each Settlement Class Member paid Defendant out-of-pocket (that is, exclusive of scholarships or other financial aid provided directly to Class members by Defendant) for tuition and fees related to the spring 2020, summer 2020, and fall 2020 semesters for courses where the Defendant did not provide the promised in-person education. S.A. at § 4.2.1. Each Settlement Class Member is entitled to a pro rata distribution of the Settlement Fund, based on the Fall 2020,

Summer 2020, and Spring 2020 Amounts Paid,[3] less the sum of any amount the Court awards in attorneys' fees and costs, a Service Award, and notice and administration expenses.

Thus, if the Court grants Class Counsel's anticipated requests for attorneys' fees and costs, a Service Award, and notice and administration expenses, and every Class Member cashes his or her check or claims his or her settlement distribution electronically, Class Counsel estimates that the average amount that each Class member will receive will be approximately $226.24, with Settlement Class Members that paid higher amounts in tuition and fees receiving a proportionately higher amount than those who paid less.

In the event that some Class members fail to cash their checks or claim their distribution electronically before the expiration of 60 days after the date of issuance by the Settlement Administrator, the Settlement Administrator shall automatically distribute any money remaining in the Settlement Fund *pro rata* to Class Members who cashed their check if the amount of such check would be at least ten dollars ($10.00). S.A. § 5.3.1.

Only after this second distribution would the Settlement Administrator make any distribution to a proposed *cy pres* recipient, the University of Rochester's Student Emergency

---

[3]    The Settlement Class Member's Fall 2020 Amount Paid and Summer 2020 Amount Paid is the amount of tuition plus mandatory fees the Settlement Class Member paid for that semester, multiplied by the "In-Person Ratio" corresponding to that semester. *See* below. The Settlement Class Member's Spring 2020 Amount Paid is the amount of tuition plus mandatory fees the Settlement Class Member paid for the Spring 2020 semester, multiplied by the Semester In-Person Ratio for the Spring 2020 semester, multiplied by 50% (representing the portion of the Spring 2020 semester that Defendant did not provide the promised in-person classes.)

The Settlement Class Member's Spring 2020 In-Person Ratio, Summer 2020 In-Person Ratio, and Fall 2020 In-Person Ratio are the credit hours for in-person courses the Settlement Class Member enrolled in (and did not withdraw from) for that semester, divided by the total credit hours the Settlement Class Member enrolled in (and did not withdraw from) for that semester. *E.g.*, a student enrolled in 15 credit hours for the Spring 2020 semester, where only 12 of those credit hours were for in-person courses, has a Spring 2020 In-Person Ratio of 0.8.

Fund. S.A. at § 5.3.1. Any funds distributed to the Student Emergency Fund will not revert back to Defendant and will not diminish Rochester's regular contributions to the fund. *Id*.

C.    The Proposed Class Notice

The proposed Notice Plan, *see* S.A. § 4.1, calls for direct, personal notice to each Settlement Class Member, all of whom can be readily identified from Defendant's records, to apprise them of the benefits available under the Settlement Agreement and their rights under FED. R. CIV. P. 23 to opt out of the Class if they so choose. *See also* S.A. at Ex. C (long-form notice). The Settlement Agreement provides that the costs of the Notice Plan and administration of the Settlement are to be borne by the Settlement Fund. S.A. at § 4.1.6.

The Notice plan set forth in the Settlement Agreement satisfies the requirements of due process. *See infra* § III.C.

D.    Dismissal and Release of Claims

The scope of the release here is narrowly tailored to the period relevant to this matter: the Spring 2020, Summer 2020, and Fall 2020 Semesters, the harm identified: the expectation of in-person educational services, and the sums sought: tuition and fees. S.A. at § 4.3. Class members do not release any other claims they may have against Defendant unrelated to the subject matter of this litigation.

E.    Attorneys' Fees and Service Award for Representation of the Settlement Class

The Settlement Agreement provides that Class Counsel may make an application to this Court for an award of attorneys' fees and litigation costs in an amount of up to one-third (1/3) of the Settlement Fund. S.A. at § 5.3. That amounts to $1,166,666.67, which is well within the range of what courts within the Second Circuit have approved for counsel fees in Rule 23(b)(3) settlement fund cases. *See*, *e.g.*, *Knapp v. Badger Techs., Inc.,* No. 12-CV-6637-CJS-MWP, 2015 WL 3745303, at *6 (W.D.N.Y. June 15, 2015) ("a one-third award is typical in class action

settlements in the Second Circuit") (quoting *Guippone v. BH S & B Holdings, LLC*, No. 09-cv-01029-CM, 2011 WL 5148650, at *8 (S.D.N.Y. Oct. 28, 2011)); *Spicer v. Pier Sixty LLC*, No. 08-cv-10240-PAE, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit."); *In re Lloy'd Am. Trust Fund Litig.*, 96 Civ. 1262 (RWS), 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (noting "scores of common fund cases where fees . . . were awarded in the range of 33-1/3% of the settlement fund."). The same percentage has been approved in other COVID-19 tuition refund actions. *See, e.g., Wright v. S. New Hampshire Univ.*, No. 1:20-cv-00609-LM, ECF 37 (D.N.H. Aug. 22, 2021); *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM, ECF 84 (S.D. Fla. Aug. 7, 2021).

The Settlement Agreement also provides that Class Counsel may make an application to this Court for a service award to Named Plaintiff Carstairs of five thousand dollars ($5,000.00) in recognition of his efforts in service to the Class. S.A. at § 5.3.

F.      Proposed Schedule Following Preliminary Approval

If the Court preliminarily approves the settlement and directs notice to the Settlement Class, the timeline for notice to the Settlement Class, Class Counsel's application for an award of attorneys fees and costs and a Service Award, and motion practice concerning final approval of the settlement will be as follows:

| Event | Timeline |
|---|---|
| Defendant to provide Class List to Settlement Administrator | 20 days after preliminary approval |
| Settlement Administrator to send Notice to Settlement Class Members | 48 days after preliminary approval |
| Class Counsel to file application for award of attorneys' fees and costs and Service Award | 45 days prior to final approval |

| Event | Timeline |
|---|---|
| Close of Opt-Out/Objection Period | 30 days prior to final approval |
| Class Counsel to file Motion for Final Approval of Class Action Settlement | 14 days prior to final approval |
| Fairness Hearing | At least 137 days after preliminary approval |

## IV.    ARGUMENT

A.    The Court Should Certify the Proposed Class for Settlement Purposes

In considering the proposed settlement, the first question is whether a settlement class may be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying settlement class, but proposed class must still satisfy the other requirements of Rule 23). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. 2014) (same). The Parties have reached a proposed Settlement on behalf of the Class set forth above. As explained below, proper and sufficient grounds for conditional certification exist under Rule 23(a) and Rule 23(b)(3).

1.    The Rule 23(a) Requirements Are Satisfied

Class certification is proper under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Each of these four requirements is easily met.

a.      Rule 23(a)(1) Numerosity

Rule 23(a)(1) does not require that joinder be impossible; rather, joinder of all members is impracticable when the procedure would be "expensive, time-consuming, and logistically unfeasible." *In re Drexel Burnham Lamber Group, Inc*., 960 F.2d 285, 290 (2d Cir. 1992). In the Second Circuit, numerosity is generally presumed "at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 64 (S.D.N.Y. 2014) (determining numerosity requirement met where consolidated class consisted of 72 members); *Gross v. Wash. Mutual Bank, F.A*., No. 02-cv-4125, 2006 WL 318814, at *2 (E.D.N.Y. Feb. 9, 2006) (deciding numerosity met in Fair Debt Collection Act class action with approximately 700 member class "because common sense dictates joinder will be impracticable" with such a large class). As discussed above, the confirmatory discovery conducted by the parties has revealed 9,982 Settlement Class Members, demonstrably satisfying the numerosity requirement.

b.      Rule 23(a)(2) Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349-50 (2011). The commonality analysis requires the court to determine (1) whether the class members' claims "will in fact depend on the answers to common questions," *id*., at 356, and (2) whether classwide proceedings have the capacity to "'generate common answers apt to drive the resolution of the litigation.'" *id*., at 350 (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)); *see also In re Nassau County Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006). Courts have found a common nucleus of operative facts where, as in the present action, the defendant engaged in standardized conduct toward

putative class members. *Comer v. Cisneros*, 37 F.3d 775, 796-97 (2d Cir. 1994); *Marisol A. v. Giuliani*, 126 F.3d 372, 376-77 (2d Cir. 1997).

Here, common questions include assert common questions to the Settlement Class that include: (a) whether Rochester accepted money from Settlement Class Members in exchange for the alleged promise to provide in-person education services; (b) whether Rochester provided the in-person education services for which the Settlement Class Members allegedly contracted; and (c) whether the Settlement Class Members are entitled to a refund for that portion of the in-person education services that was allegedly not delivered. These common questions, which target the same alleged misconduct by Rochester, satisfy Rule 23(a)(2). As such, the Settlement Class raises common questions of law and fact, which arise from a common nucleus of operative facts with respect to the claims against Rochester. Commonality is satisfied.

c.    Rule 23(a)(3) Typicality

Rule 23(a)(3) requires that the claims of the class representative be "typical of the claims . . . of the class." Rule 23(a)(3) and the adequacy of representation requirement set forth in subsection (a)(4) are designed to assure that the interests of unnamed class members will be adequately protected by the named class representatives. *See, e.g., Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). The threshold for establishing typicality is low. Typicality does not require that the claims of the class members be identical. The claims merely have to arise from the same course of conduct. *Comer*, 37 F.3d at 797; *Marisol A.*, 126 F.3d at 376.

Plaintiff's claims arise out of the same course of conduct and are based on the same legal theories as those of the Class members. His experience is typical of all other Settlement Class Members who enrolled as on-campus students of Rochester, registered for in-person classes, paid money in exchange for in-person education and access to on-campus facilities and services that were denied when Rochester closed its campus during the spring 2020, summer 2020, and fall

2020 semesters. Because the essence of each Class member's claim is precisely the same, Settlement Class Members have no individual interests in controlling the litigation and, in any event, can choose to opt out of the settlement. Accordingly, the Named Plaintiff's claims are typical of the claims of the Settlement Class.

d.    Rule 23(a)(4) Adequacy

The requirement of Rule 23(a)(4) is met if it appears that (1) a plaintiff's attorneys are "'qualified, experienced and generally able' to conduct the litigation" and (2) a plaintiff's interests are not antagonistic to those of the class he seeks to represent. *In re Drexel Burnham Lambert Group, Inc*., 960 F.2d at 291 (citation omitted); *see also Marisol A.*, 126 F.3d at 378. Both prongs of the "adequacy" test are met here.

First, Plaintiff has retained highly experienced class action practitioners to prosecute his claims and those of the Class. The firm of Francis Mailman Soumilas, P.C. is highly regarded nationally for the high caliber of its work and experience in consumer protection class action litigation. Exhibit 2, Declaration of James A. Francis ("Francis Decl."). The Golan Firm PLLC is similarly qualified. Exhibit 3, Declaration of Yvette Golan ("Golan Decl.").

Second, Named Plaintiff Daniel Carstairs has actively participated in the litigation fulfilled his obligations throughout the case, including engaging with counsel and completing discovery. *See* Golan Decl. at ¶¶ 23, 26. Moreover, he has no interests antagonistic to the interest of the Class. There are no conflicts between Plaintiff's interests and the interests of the Settlement Class.

Accordingly, the requirement of adequate representation under Rule 23(a)(4) is satisfied.

2.    The Rule 23(b)(3) Requirements Are Satisfied Here

In addition to meeting the four threshold requirements of Rule 23(a) as set forth above, the proposed settlement class here satisfies the requirements of Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affect individual members"

and, (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of these matters, it will dispose of them entirely. Plaintiff alleges on behalf of the Settlement Class that Defendant breached its contract with him or, in the alternative, was unjustly enriched when it transitioned its in-person classes to a remote learning format and closed its campus without any corresponding rebate of tuition and/or fees during the spring 2020, summer 2020, and fall 2020 semesters. The nature of Rochester's alleged breach is the same for each member of the Settlement Class, and each Settlement Class Member suffered the same harm for the same amount of time due to the same actions or inactions of Rochester. Even if any individual issues of significance existed to complicate a trial in this matter (they do not), because the Class is being certified for settlement purposes and not for trial, this Court "need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here. Separately litigating the common issues that bind the classes would be a practical impossibility, even if one assumes that Rochester students had notice of their claims and it was economically feasible for those students to pursue these claims on their own. Simply put, "there is a strong presumption in favor of a finding of superiority" where, as here, "the alternative to a class action is likely to be no action at all for the majority of class members." *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 396 (N.D. Ill. 2006). Furthermore, even if just a small fraction of the class members were to bring individual suits, the resolution of common issues in a single proceeding

13

here would be infinitely more efficient than would be the separate adjudication of individual claims in potentially thousands of separate lawsuits.

B.    The Settlement Is Fair, Reasonable, and Adequate

Once a proposed settlement is reached, a court must make a determination whether proposed terms of the agreement warrant preliminary approval. *In re Currency Conversion Fee Antitrust Litig.*, No. 01-MDL-1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (acknowledging Rule 23(e) requires court to approve class action settlement). In order to grant preliminary approval, a court must make an initial evaluation of "the fairness, reasonableness, and adequacy of the settlement terms." *Nieves v. Cmty. Choice Health Plan of Westchester*, No. 08-cv-321, 2012 WL 857891 (S.D.N.Y. Feb. 24, 2012). At this preliminary stage, it is not necessary for the court to consider all the *Grinnell* factors applicable to final approval.[4] *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at 12 (S.D.N.Y. July 15, 2014) (recognizing courts in Second Circuit "typically consider nine *Grinnell* factors at final approval

---

[4]    In connection with final approval, the Court will ultimately be required to assess the following factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974). On balance, based on information known at this time (some of which is highlighted herein) and as will be set forth in a subsequent motion for final approval of the settlement, the totality of the *Grinnell* factors will weigh in favor of granting final approval of the proposed Settlement. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) ("In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" (quoting *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).

stage."); *Nieves*, 2012 WL 857891, at *5 ("The Court need not perform full fairness analysis at this time because it will be done in connection with the fairness hearing."). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *accord In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *5; *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).

Because the proposed settlement is the product of arm's length, non-collusive negotiations among experienced counsel who were assisted by a noted Mediator and falls within a reasonable range with no improper preferential treatment provided to the Named Plaintiff or any segments of the Settlement Class, preliminary approval should be granted.

1.     The Proposed Settlement Is the Result of Arm's Length Negotiations

A "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores, Inc., v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation omitted). Here, the Settlement was reached following extensive arms-length negotiations following robust discovery including multiple depositions, substantial document production, and an exchange of expert reports. Moreover, the Settlement was negotiated at arm's length by counsel with extensive experience in consumer protection class action litigation, who have a full understanding of the pros and cons of proceeding with the action in lieu of settlement at this juncture. *Gross*, 2006 WL 318814, at 5 ("The litigation has thus proceeded to a stage at which counsel have demonstrated a thorough understanding of the complexity of the issues and the strengths and weaknesses of their respective claims, defenses and strategies.").

As noted above, the parties participated in a day-long mediation session with retired United States Magistrate Judge Diane M. Welsh of JAMS prior to reaching their agreement in principle to settle this matter in March of 2024. Accordingly, Plaintiff submits the Agreement was negotiated in good faith and free of collusion.

2.    The Settlement Is Within the Range of What Is Reasonable

This case arises from an unprecedented factual context and presents novel issues that have been widely litigated—with mixed results—across the country and within New York. Here, the proposed settlement confers a substantial and real benefit on the Settlement Class Members in one of a series of novel breach of contract cases arising out of educational institutions' responses to the COVID-19 pandemic as opposed to unclear results and risks of continuing this litigation. Numerous similar cases have been filed across the country, including in New York, and raised issues that are currently being decided, including: what is a college student's contract with a university and how can one accurately value the economic differences between in person, online, and hybrid-delivered educational services. Moreover, as Rochester's early motions to dismiss the complaint and amended complaint demonstrate, although cases like this one may present familiar claims, they contain myriad complexities. *See* ECFs 10, 15. Thus, "[t]he adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of Plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *Lowe v. NBT Bank, N.A.*, No. 3:19-CV-1400-MAD-ML, 2022 WL 4621433, at *9 (N.D.N.Y. Sept. 30, 2022) (same).

Here, the anticipated average Settlement Class Member payment is expected to be approximately $226.24 per student, which places the financial recovery provided by the settlement solidly within—and in some cases above—the relief provided by other settlements that have been

approved by courts around the country on the same claims, which have ranged $59 per student to around $800 per student. *See Rocchio v. Rutgers*, Case No. MID-L-003039-20 (N.J. Super. Ct.) (approving recovery of less than $80 per student as an average); *Martinez v. Univ. of San Diego*, No. 3:20-CV-01946-RBM-VET, 2025 WL 886970, at *3, *14 (S.D. Cal. Mar. 21, 2025) (granting final approval with a recovery of approximately $93.46 per student); *Espejo v. Cornell Univ.*, Case No. 3:20-cv-467-MAD-ML (approving recovery of less than $150 per student); *Jones v. Tulane*, No. 2:20-cv-02505 at ECF 230 (April 30, 2025 Order approving settlement with average recovery of approximately $203 per student); *Kincheloe*, No. 1:20-cv-3015 (N.D. Ill. May 23, 2024) (granting final approval on the proposed settlement with an average recovery of $261.90 per student); *Ramey v. The Pennsylvania University*, No. 2:20-cv-753 (W.D. Pa.) (ultimately approving recovery with the average recovery of $225 to $250 per student); *see Leonard v. La Salle Univ.*, Case No. 2:24-CV-62, ECF 31-1 (E.D. Pa.) (collecting cases); *see also supra* note 2.

Given the considerable risk that continued litigation could result in no recovery for the class at all, Named Plaintiff and his counsel believe that the settlement is well within the range of reasonableness because it confers a substantial, certain, and immediate benefit upon the Class in the form of monetary relief. *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("'Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recover for the Class.'") (citation omitted). This is particularly true when taking account of the potential expense and duration of continuing to litigate this case, including the time and expense associated with litigating this case through trial against Defendant and through possible appeals, could take several more years. *See In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *6 (determining settlement

17

was within reasonable range where "the expense and delay of continued litigation could be substantial").

For the aforementioned reasons, preliminary approval should be granted by this Court because the Settlement falls within the range of reasonableness at this stage of the proceedings.

C.     <u>The Court Should Approve the Proposed Notice to the Settlement Class</u>

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement[.]" F.J.C., Manual for Complex Lit. § 21.312. The best practicable notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The proposed Class Notice Plan satisfies all these criteria. *See* S.A. at § 4.1, Ex. C. The Notice informs Settlement Class Members of the substantive terms of the Settlement, presents their options for opting out of or objecting to the settlement, and provides options for obtaining additional information about the settlement. Rochester will provide a Class List containing the names and last known addresses, e-mail addresses, and telephone numbers for each Class Member. S.A. at § 2.5. The Settlement Administrator will send the Notice via electronic mail to the last known email address reflected in the Class List if there is an email address associated with a Settlement Class Member. S.A. at § 4.1.3. If there is no email address associated with a Settlement Class Member, or if an email bounce back is received upon attempted transmission, then within twenty-eight (28) days after Preliminary Approval the Settlement Administrator will send the Notice to Settlement Class Members via U.S. mail, postage prepaid, also requesting either forwarding service or change service to the last known address reflected in the Class List. *Id*. Prior to mailing, the Settlement Administrator shall utilize the U.S. Postal Office's National Change of Address System. *Id*. For those Settlement Class Members whose notice is ultimately delivered by

U.S. Mail, and for up to forty-five (45) days following the mailing of the Notice via U.S. Mail (if applicable), the Settlement Administrator will re-mail the Notice via standard U.S. Mail, postage prepaid, to those Settlement Class Members whose notices were returned as undeliverable to the extent an alternative mailing address can be reasonably located. *Id.* The Settlement Administrator will first attempt to re-mail the Notice to the extent that it received an address change notification from the U.S. Postal Service. If an address change notification form is not provided by the U.S. Postal Service, the Settlement Administrator may attempt to obtain an updated address using reasonable and appropriate methods to locate an updated address. *Id.*

Moreover, no later than five (5) days prior to the mailing of the Notice as described above, notice shall be provided on a Settlement Website along with copies of the Settlement Agreement, the Notice, and other pertinent documents and Court filings shall be provided on the Settlement Website. S.A. at § 4.1.4. For these reasons, the Court should approve the notice plan and form of Notice. *See, e.g., Porter v. Emerson College*, No. 20-CV-11897-RWZ (D. Mass. Jul 21, 2022) (approving similar notice plan in similar case).

D.    The Court Should Appoint Named Plaintiff's Attorneys as Class Counsel

Rule 23(g) requires the Court to appoint class counsel to represent the class, and Named Plaintiff's attorneys should be appointed to serve as Class Counsel here because they have adequately represented the class in this litigation, are highly experienced in class action litigation, and have been appointed as class counsel in a number of similar college tuition refund cases throughout the country.[5] *See also* Exs. 2, 3. Accordingly, the Court should appoint Plaintiff's attorneys as Class Counsel in this matter.

---

[5]    *See, e.g., Martinez v. Univ. of San Diego*, No. 3:20-CV-01946-RBM-VET, 2025 WL 886970, at *7 (S.D. Cal. Mar. 21, 2025) (approving settlement, noting that "Class Counsel has significant experience in complex commercial and class action matters, including cases involving

## V.     CONCLUSION

The Court may certify the Settlement under Rules 23(a) and 23(b)(3), and it is fair, reasonable, and adequate. Thus, Named Plaintiff Carstairs respectfully requests, for all the reasons set forth above, that preliminary approval be granted, and the Court enter an Order preliminarily approving the Settlement Agreement and directing notice to Settlement Class Members, and schedule a fairness hearing at least 137 days after the entry of the that Order.

Dated:     May 30, 2025                    Respectfully submitted,

DANIEL CARSTAIRS,
*on behalf of himself and the Settlement Class*,

By:     */s/James A. Francis*
James A. Francis*
John Soumilas*
Jordan M. Sartell*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

Yvette Golan
THE GOLAN FIRM PLLC
529 14th Street, Suite 914
Washington, D.C. 20045
T: (866) 298-4150
F: (928) 441-8250
ygolan@tgfirm.com

Attorneys for Named Plaintiff and the
Settlement Class

*admitted *pro hac vice*

---

tuition and fees during COVID-19."); *Jones v. Adm'rs of Tulane Educ. Fund*, No. CV 20-02505, ECF 229 (E.D. La. April 30, 2025) (approving settlement).