# Exhibit 3

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DANIEL CARSTAIRS, on behalf of himself
and all others similarly situated,

          Plaintiff,

    v.                               6:20-cv-06690-CJS-MJP

UNIVERSITY OF ROCHESTER,

          Defendant.

**DECLARATION OF YVETTE GOLAN IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, YVETTE GOLAN, declare pursuant under penalty of perjury that the foregoing is true

and correct:

1.      I am an attorney duly licensed to practice before all of the courts of the states of

Texas, Illinois, New York, the District of Columbia, as well as federal district courts and federal

appellate courts. I have been admitted in the Western District of New York *pro hac vice* for this

action. I have been practicing law for over twenty years. The following statements are based on

my personal knowledge. If called to testify as a witness, I could and would competently testify

thereto.

2.      I, along with my co-counsel, Francis Mailman Soumilas, P.C., represent Plaintiff

and the putative class in the present action.

**Professional Background**

3.      I graduated Cornell Law School *magna cum laude* in 2002, whereupon I clerked

for Judge J. Clifford Wallace of the Ninth Circuit Court of Appeals, in San Diego, California.

4.      I continued my litigation career at the main office (Chicago) of Kirkland & Ellis

LLP, where I defended large corporations in complex class actions, including multiple state-wide

and national class actions against General Motors for alleged engine, coolant, and cooling system defects, W.R. Grace in asbestos class actions, and other Fortune 100 companies. In my time at Kirkland & Ellis, I took responsibility for discovering and presenting much of the complex data and evidence necessary in such litigation.

5.      I then relocated to Texas, where I continued my legal work but focused my time in the business arena, particularly in the consumer products industry. I served as general counsel and director to an international company that financed, manufactured, and distributed high-volume consumer products to big-box retailers including CVS, Walgreen's, Wal-Mart, Target, and others.

6.      In 2011, I returned full-time to the practice of law, forming The Golan Firm PLLC to focus on class action litigation involving false advertising.

7.      I have been a speaker at various legal conferences and industry events, including the American Bar Association's Mass Tort Conference, the National Consumer Legal Center's Annual Class Action Symposium, and the annual ExpoWest (the largest trade show in the natural and organic product industry). I have written for legal publications, including the American Bar Association, and I play an advising role to a non-profit organization that nominates and advises on federal judicial appointments.

8.      My legal practice emphasizes false advertising claims, both in private negotiations and in federal litigation. My firm and staff are highly qualified and have extensive experience in such matters, and we are at the forefront of class action litigation concerning false advertising of consumer products.

9.      My legal practice also includes areas of complex class action litigation, including, *inter alia*, breach of contractual data privacy and security commitments by major software companies, and intermediate telecommunications providers' liability under the Telephone

Consumer Protection Act. *See Russo et al. v. Microsoft Corp.*, 3:20-04818 (N.D. Cal.); *Mey v. All Access Telecom, Inc., et al*, 5:19-cv-00237 (N.D. W.Va.).

10.    In addition to sizable class action settlements I have successfully obtained in similar COVID college tuition matters, *see infra*, as appointed class counsel, I have successfully obtained sizable settlements in other class actions, as well. *See, e.g., In re Honest Marketing Litig.*, 16-cv-01125 (ECF 98) (noting that I and my co-counsel were "extremely diligent in pursuing the best possible outcome for the Class"). As class counsel, I have also obtained full sought-after advertising changes in *Janney v. General Mills, Inc.*, 12-cv-03919-WHO (N.D. Cal.); *Rojas v. General Mills, Inc.*, 12-cv-05099-WHO (N.D. Cal.); *Bohac v. General Mills, Inc.*, 12-cv-05280 (N.D. Cal.); and *Van Atta v. General Mills, Inc.*, 1:12-cv-02815-MSK-MJW (D. Co.). I have also secured agreements for major telecommunications providers to reject telephone calls that spoof invalid phone numbers. *Mey v. All Access Telecom, Inc., et al*, 5:19-cv-00237 (N.D. W.Va.) (ECF 309).

11.    My past work as a defense litigator and general counsel has enabled me to provide my clients with a wide variety of methods to avoid or remedy a legal violation. Through negotiations, rather than litigation, I have successfully (though confidentially) secured significant changes to business practices and obtained substantial monetary recoveries for my clients.

12.    I have a long working relationship with Francis Mailman Soumilas, P.C., co-counseling with them since 2012. Through our long-term working relationship, we have demonstrated a history of providing excellent legal representation while avoiding duplication of efforts.

**Experience in COVID College Tuition Class Actions**

13.     In addition to the present action, my co-counsel and I are also counsel of record for the plaintiffs in seven other pending actions against other universities similarly alleging the wrongful retention of full tuition and fee payments given the cancellation of in-person education. *In re Univ. S.D. Tuition Covid Refund Litig.*, No. 20-cv-1946-LAB-WVG (S.D. Cal. filed Apr. 28, 2021); *Jones v. Tulane Univ.*, No 2:20-cv-02505 (E.D. La., filed Dec. 21, 2020); *Grant v. Chapman Univ.*, No. 30-2020-01146699-Cu-BC-CXC (Cal. Super. Ct., filed July 7, 2020); *Polley v. Northwestern Univ.*, No. 1:20-cv-04798 (HDL) (D. Ill., filed Oct. 15, 2021); *Rodrigues v. Boston College*, No. 1:20-cv-11662-RWZ (D. Mass., filed Dec. 15, 2020); *Schmidhauser v. Tufts Univ.*, No. 1:20-cv-11940-RWZ (D. Mass., filed May 03, 2021); and *Michel v. Yale University*, No. 3:20-cv-01080 (D. Conn., filed July 29, 2020).

14.     At the Fifth Circuit Court of Appeals, I successfully briefed and argued the appeal of the district court's dismissal of Plaintiffs' claims, obtaining a complete reversal in a thorough, well-considered decision that is widely cited by plaintiffs in similar COVID-19 tuition cases. *Jones v. Administrators of Tulane Educ. Fund*, 51 F.4th 101 (5th Cir. 2022).

15.     As appointed class counsel, I have successfully obtained sizable settlements in COVID college tuition cases. *See, e.g., Martinez v. Univ. of San Diego*, No. 3:20-CV-01946-RBM-VET, 2025 WL 886970, at *7 (S.D. Cal. Mar. 21, 2025) (approving settlement, noting that "Class Counsel has significant experience in complex commercial and class action matters, including cases involving tuition and fees during COVID-19."); Minute Entry, *Jones v. Adm'rs of Tulane Educ. Fund*, No. CV 20-02505 (Dkt. 229) (April 30, 2025) (approving settlement).

4

**Efforts in the Present Action**

16.　　I have devoted substantial time, effort, and funds to prosecute this action, including conducting the pre-suit factual and legal investigation, successfully briefing Plaintiff's opposition to Defendant's motion to dismiss, and both obtaining and analyzing the key discovery required for this litigation. In this action, my staff and I have worked together, diligently and efficiently, with the attorneys and staff at Francis Mailman Soumilas, P.C., who have also prosecuted this case with skill and expertise.

17.　　My co-counsel and I have committed all necessary resources required to zealously prosecute this action and adequately represent the class – including substantial time and significant financial investment, giving each stage of litigation the care and attention it requires.

18.　　In 2020, my firm began investigating Rochester's policy of retaining full tuition and fees from students despite its move to remote education. Over the course of our investigation, I spoke to Rochester students about their post-pandemic experience with remote education at Rochester, and their expectations when they first enrolled at Rochester. On average, each conversation lasted about an hour. I also spoke to over 100 students from other universities who similarly canceled in-person education and moved to remote-only education, discussing both their post-pandemic experience with remote education and their expectations when they enrolled at the schools. Here too, on average, each conversation lasted about an hour.

19.　　On behalf of other students who paid (directly or indirectly) tuition and fees to Rochester for in-person services and education not provided, we filed the present suit in the Western District of New York on September 10, 2020 (Doc. 1). After the conclusion of the Fall 2020 semester, we filed the Amended Complaint on January 8, 2021 (Doc. 12).

20.    I took the lead in briefing Plaintiff's Opposition to Rochester's Motion to Dismiss (Doc. 19).

21.    While Rochester's motion was pending, the parties filed numerous Notices of Supplemental Authority regarding Rochester's Motion to Dismiss. (Dkts. 26, 27, 29-33, 38.) The case was then reassigned to Judge Larimer. (Dkt. 36.) On February 14, 2023, the Court requested the parties advise of any district court cases from the Second Circuit that are currently on appeal before the Court of Appeals (Dkt. 40), which the parties did within a week (Dkts. 41, 43). The case was then transferred to Judge Siragusa (Dkt. 44), who denied Rochester's Motion to Dismiss on May 25, 2023 (Dkt. 46).

22.    My co-counsel and I then began discovery in earnest (*see* Dkts. 50-53, 62). By this point, my co-counsel and I had years of experience in litigating COVID college tuition cases, and we knew what information was the most crucial for success. I, my staff, the attorneys and staff at Francis Mailman Soumilas, P.C., have worked together, efficiently and diligently, to streamline both our discovery requests and our analysis of Rochester's thousands of pages of documents served in response. We also reviewed thousands of additional pages of market studies and reports in assessing proof of class-wide damages.

23.    We also prepared for the deposition and the production of documents from Plaintiff, Daniel Carstairs.

24.    As our discovery efforts were continuing, we were referred to mediation pursuant to the United States District Court for the Western District of New York Alternative Dispute Resolution Plan (Dkt. 53). On March 21, 2024, the parties participated in a day-long mediation with the Hon. Diane Welsh (Ret.) of JAMS, and agreed to settle all claims (Dkt. 68).

25.     Since that date, the parties continued with discovery necessary to finalize the settlement. Notably, because some students continued to receive in-person education after Rochester's COVID-related transition to online learning, and some students enrolled in courses that were to be provided online even before COVID, the parties had to extract and analyze complex datasets that took Rochester several months to produce despite the parties' best efforts to streamline. Following unexpected health-related delays and unexpected matters requiring the University's attention the past several months, the parties required extra time to finalize the Settlement in May, 2025.

26.     Since the beginning of this litigation, Daniel Carstairs has been an outstanding class representative, providing me and my co-counsel with direction, documents, information, and context necessary to zealously pursue his and the class members' claims.

27.     As detailed in the accompanying memorandum of law, the settlement represents a fair, reasonable, and adequate compromise of the issues in dispute.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of May, 2025 in Washington, D.C.

> */s/Yvette Golan*
> Yvette Golan
> **THE GOLAN FIRM PLLC**
> 529 14th Street NW, Suite 914
> Washington DC, 20045